[S. F. No. 3069.   Department One.—October 12, 1904.]

CALIFORNIA ELECTRIC LIGHT COMPANY, Respondent, v. CALIFORNIA SAFE DEPOSIT AND TRUST COMPANY, Executors, etc., and LAURA B. ROE, Executrix, etc., of George N. Roe, Deceased, Appellants.

CORPORATION — SECRET COMMISSION RECEIVED BY OFFICER — ACTION AGAINST EXECUTORS—EVIDENCE—MOTIVES OF WITNESS ASSAILED— REBUTTAL.—In an action by a corporation against the executors of a deceased officer and manager, to recover a secret commission received by him upon sale of its property, where the motives of a witness for the plaintiff, who testified to his sharing a commission with such officer, were assailed by the executors' counsel for having concocted the story after the officer's death, in revenge for disallow-

ance of a claim by him against the estate, it was proper, in rebuttal
of such charge, to admit letters addressed by the witness to the
officer in his lifetime making the same claim, and, for the same
limited purpose, to admit other letters and declarations of the wit-
ness in relation to sharing the commission, made prior to the death
or to the presentation of the claim against the estate.

ID.—INFLUENCE UPON JURY—EQUITY CASE—ADVISORY VERDICT—REVIEW
UPON APPEAL.—If the jury were influenced in their verdict by the
evidence admitted before them for a limited purpose, this would not
justify a reversal of the judgment against the accused in a case in
equity. In such a case the verdict is at most only advisory to the
court; and where the court acted upon its own judgment, and, in
addition to approving the special verdict, made and filed its own
findings and decision, the correctness of the decision of the court,
and not of the verdict as rendered by the jury, is the question to be
determined upon appeal.

ID.—FINDING AS TO AMOUNT—INFERENCE FROM EVIDENCE.—Where there
is evidence tending to sustain the finding of the jury and court as
to the amount and value of the stock received by the defendant
as a secret commission, it was for the court to determine the proper
construction of the testimony and the inference of fact to be drawn
therefrom; and the fact that the evidence might warrant a differ-
ent inference does not justify this court in disturbing the finding
for want of evidence.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen, Harding & Knight, for Appellants.

The court erred in admitting letters and declarations of the
witness Lloyd, which were hearsay. (1 Wigmore's Greenleaf
on Evidence, sec. 469b; *Ellicott* v. *Pearl,* 10 Pet. 412, 439;
*Robb* v. *Hackley,* 23 Wend. 50; *Ætna Ins. Co.* v. *Eastman,* 95
Tex. 34; *People* v. *Doyell,* 48 Cal. 85, 90; *Mason* v. *Vestal,* 88
Cal. 396;[1] *People* v. *Rodley,* 131 Cal. 255; *Rulofson* v. *Billings,*
140 Cal. 152; *Barkly* v. *Copeland,* 74 Cal. 1;[2] *Silva* v. *Packard,*
10 Utah, 89; *Ewing* v. *Keith,* 16 Utah, 312; *Train* v. *Taylor,*
51 Hun, 215; *People* v. *Colburn,* 105 Cal. 645; *Casey* v. *Leg-*
*gett,* 125 Cal. 664; *People* v. *Lee Dick Lung,* 129 Cal. 491;
*Learned* v. *Tillotson,* 97 N. Y. 1, 11;[3] *Bank of British North*

[1] 22 Am. St. Rep. 310.          [3] 49 Am. Rep. 508.
[2] 5 Am. St. Rep. 413.

*America* v. *Delafield,* 126 N. Y. 410; *Thomas* v. *Gage,* 141 N. Y. 506; *Percy* v. *Bibber,* 134 Mass. 404; *Morris* v. *Norton,* 75 Fed. 912; *Sullivan* v. *McMillan,* 26 Fla. 543; *Canadian Bank* v. *Coumbe,* 47 Mich. 358; *Dempsey* v. *Dobson,* 174 Pa. St. 122;[1] *State* v. *Howell,* 61 N. J. L. 142; *Razor* v. *Razor,* 149 Ill. 624; *Wiedemann* v. *Walpole,* 2 Q. B. Div. (1891) 534.)

W. E. Goodfellow, and Garret W. McEnerney, for Respondent.

On the issue tendered by appellants as to whether the evidence of Lloyd was concocted after the presentation and disallowance of his claim against the estate of George H. Roe, the letters and declarations of Lloyd were admissible to show the contrary, and remove the false imputation. (*Barkly* v. *Copeland,* 74 Cal. 1;[2] *Gates* v. *People,* 14 Ill. 433, 438; *State* v. *Dennin,* 32 Vt. 158; *State* v. *Vincent,* 24 Iowa, 570;[3] 1 Greenleaf on Evidence, 16th ed., sec. 469, par. 4, p. 607; *McLain* v. *British etc. Marine Ins. Co.,* 38 N. Y. Supp. 77, 79; 16 Misc. Rep. 336; *Baber* v. *Broadway etc. Co.,* 29 N. Y. Supp. 40, 42; 9 Misc. Rep. 20; *In re Hesdra's Will,* 119 N. Y. 615, 617; *Herrick* v. *Smith,* 13 Hun, 446; *Gilbert* v. *Sage,* 57 N. Y. 639, 640; *Robb* v. *Hackley,* 23 Wend. 50, 53; *Hotchkiss* v. *Germania Fire Ins. Co.,* 5 Hun, 90; Wharton on Criminal Evidence, sec. 492; *Howard* v. *Commonwealth,* 81 Va. 488, 490; *Baltimore etc. R. R. Co.* v. *Knee,* 83 Md. 77, 88; *State* v. *Flint,* 60 Vt. 304, 316; *French* v. *Merrill,* 6 N. H. 465, 467.) No reversible error was committed. (Code Civ. Proc., sec. 475; *Redfield* v. *Oakland etc. Ry. Co.,* 112 Cal. 221; *Glenmore Distilling Co.* v. *Craig,* 128 Cal. 264, 268.)

VAN DYKE, J.—This was an action to recover a secret commission claimed to have been received by the defendants' testator while an officer of the plaintiff corporation on the sale by plaintiff of certain of its property. From a judgment for plaintiff and an order denying defendants' motion for a new trial the defendants now prosecute this appeal.

George H. Roe, of whose last will and testament the defendants are executors and executrix respectively, was in his lifetime the secretary and manager of the plaintiff, California

---

[1] 52 Am. St. Rep. 816.

[2] 5 Am. St. Rep. 413.

[3] 85 Am. Dec. 753.

Electric Light Company. The plaintiff was incorporated prior to 1890. The cause of action here arose in the years 1892 and 1893. Mr. Roe died December 10, 1894. The action is based upon a claim duly presented to the executors and by them rejected.

The action is one in equity for an accounting against the executors of the will of George H. Roe, deceased, and the defendants requested the court below to impanel a jury to advise it upon the issues raised by the pleadings; and, at their request, certain interrogatories were submitted, which, together with the answers of the jury, are as follows:—

"1. Was there a secret agreement made between George H. Roe and C. R. Lloyd by which, in consideration of his assistance to be rendered in procuring a commission to be allowed and paid by the plaintiff, the California Electric Light Company, of one thousand shares of the capital stock of the Edison Light and Power Company, George H. Roe should receive one half of said commission?

"Yes.

"2. Did George H. Roe, pursuant to such secret agreement, receive one half of such commission, to wit: five hundred shares of the capital stock of the Edison Light and Power Company?

"Yes."

The trial of the cause occupied pretty much all the month of November, 1897. Thereafter—to wit, March 15, 1898—the court adopted the verdict of the jury and made additional findings of fact and stated the account between the parties, and awarded a judgment in favor of the plaintiff for $71,-324.26, payable in due course of administration, with legal interest from that date. The appellants rely for a reversal upon four rulings of the court upon the admission of evidence, and upon insufficiency of evidence to support the findings. The four rulings of the court referred to are designated as exceptions Nos. 9, 10, 37, and 42.

Exception No. 9 was taken to the admission of a letter of August 6, 1894, written by Lloyd at New York to Roe in San Francisco, and contained, as Lloyd stated, in an envelope returned to him by Mrs. Roe after Roe's death, with the indorsement: "Letter from C. R. Lloyd to be returned to him

unopened in case of my death." The theory of the defendants, as developed at the trial, was, that Lloyd, who was the principal witness on behalf of the plaintiff, was actuated by a motive of revenge against Roe's executors for having failed to comply with his demand for the payment of his claim against said estate of twenty-one thousand dollars, and it is also the contention of the defendants that this suit was instigated by Lloyd after his claim against Roe's estate had been rejected. In seeking to show that this was the case, Mr. McCutchen, counsel for defendants, on cross-examination of Lloyd, asked the following questions:

"Q. After he was dead you made a claim against his estate to recover twenty-one thousand dollars of it back?

"A. Before he died I wrote——

"Q. [Interrupting.] Just answer my question, please.

"A. I made the claim when he was living.

"*Mr. McCutchen.*—I insist upon an answer to the question, and if the witness has any explanation he can make it. . . .

"*The Court.*—You will have to answer that question, Mr. Lloyd. I will let that portion stand, 'I made the claim while he was living.' The question virtually is, Did you make the claim after he was dead?

"*Mr. McCutchen.*—That is my question.

"A. I made it during his lifetime, and after he was dead, and you know it, in both instances.

"*The Court.*—Mr. Lloyd, I have cautioned you several times now about making these remarks.

"*The Witness.*—I beg your pardon.

"*The Court.*—Strike out that 'and you know it.' "

Upon redirect examination counsel for the plaintiff produced and submitted to Mr. Lloyd a letter which he had written on August 6, 1894, to George H. Roe. After Mr. Roe died this letter was returned to Mr. Lloyd by Mrs. Roe, the widow of George H. Roe, in a sealed envelope, and had indorsed upon it, in the handwriting of George H. Roe: "This letter is to be returned to Charles R. Lloyd, unopened, in the event of my death." The plaintiff then offered the letter in evidence. After some discussion between court and counsel in reference to the admission of the letter, the court put this question to defendants' counsel: "Is it your theory, Mr. McCutchen, that this claim is an afterthought, and pressed by

Mr. Lloyd because his own claim against the Roe estate was rejected?

"*Mr. McCutchen.*—Yes, sir.

"*The Court.*—That is your theory?

"*Mr. McCutchen.*—Yes, sir.

"*The Court.*—Well, then, that will settle it.   If that is true, then this letter is admissible upon that theory, as showing that the claim was made prior to the institution—or rather the claim involved in this suit was made prior to the claim against the Roe estate.   This letter is dated August 6, 1894.

"*Mr. McCutchen.*—I understand your honor does not admit this letter as an admission of Mr. Roe?

"*The Court.*—No, sir."

The letter referred to was written from New York, as stated, August 6, 1894, and is quite lengthy, going over many matters that seemed to have occurred between Lloyd and Roe in reference to the Electric Light Company and the Edison Company.   He says in the letter, among other things: "I have no desire to quarrel with you and will avoid doing so unless it becomes necessary to protect the company from injury.   If that occasion should arise, it will mean your resignation, and the return by you to the California Electric Company of the $71,000 I gave you of the $100,000 worth of stock paid to me."   The registered letter receipt and the registered return receipt were also read in evidence, and the envelope with the indorsement as stated.

The Code of Civil Procedure (sec. 2048) reads as follows: "The opposite party may cross-examine the witness as to any facts stated in his direct examination, or connected therewith, and in so doing may put leading questions; but if he examine him as to other matters, such examination is to be subject to the same rules as a direct examination."   In this case the attorney of defendants, in the cross-examination referred to, examined the witness as to other matters than those testified to by him on the direct examination, and in effect presented a new issue,—that is, that after the executors in the Roe estate had rejected the claim of Lloyd for twenty-one thousand dollars he instigated the bringing of this suit, and had invented or concocted the claim that Roe had received half of his commission and retained the same.   It was proper, therefore, on

redirect examination to admit the evidence in question, as showing that the claim was made prior to the institution of the suit and prior to the claim against the Roe estate, in corroboration of the witness Lloyd's testimony to that effect, and the court, it seems, was very careful to limit it to that purpose. On this subject in *People* v. *Doyell*, 48 Cal. 90, the court say: "Such declarations may, however, be admissible in contradiction of evidence tending to show that the account is a fabrication of late date, when it may be shown that the same account was given before its ultimate effect and operation could have been foreseen; and also, perhaps, in other peculiar cases." And in *Barkly* v. *Copeland*, 74 Cal. 4,[1] it is said: "It has been frequently held that when the witness is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist." (Citing a number of cases from other jurisdictions, and Wharton on Evidence, sec. 570.)

In response to the cross-examination of Lloyd he was permitted to testify without objection as follows: "I had said to Mr. Roe in his lifetime that he had received $71,000 out of this transaction. On one occasion I wrote to him in Santa Barbara while he was there. I wrote to him on several occasions with respect to that, and I wrote him from New York some time in the latter part of 1894—that letter was returned to me some time after his death." Again, without objection: "In the lifetime of Mr. Roe I made a claim against him for the return of the $21,000. I once wrote him a letter to Santa Barbara. I have the original letter in pencil from which the letter to Mr. Roe was copied. I wrote it out myself in ink from the pencil copy. I retained the pencil copy, and have it with me. I left the finished draft with Miss Buttner at Sunol, where I was staying for a few days, to mail. I inclosed the letter in an envelope and addressed it to George H. Roe, at the Arlington Hotel, Santa Barbara. He was there at the time. After the letter was inclosed in an envelope and addressed, I left it at the Buttner house in Sunol with directions to mail it." Miss Buttner, the stenographer, was permitted to testify to the writing and mailing of the letter of February 18, 1894, without any objection. This letter was admitted by the court

---

[1] 5 Am. St. Rep. 413.

for the sole purpose of showing that Lloyd did not invent the claim that Roe had received half of his commission after Lloyd's individual demand against the Roe estate was rejected, and was limited to that purpose, and not admitted as an admission on the part of Roe of the truth of the contents of the letter. In the letter, which is quite lengthy, he calls the attention of Roe again to the seventy-one thousand dollars which he had received as half of the commissions in the transaction referred to in the New York letter, saying: "You are not entitled to more than one half the San Francisco commission, and if that stock deal or the sale of the Engineering Co. does not go through soon, I hope you are man enough to refund me that $21,000 without my having to press you for it. I wish to be on friendly terms with you and regret much more than you do our present differences." Upon the authorities referred to in support of the ruling of the court in reference to the New York letter it was not error to admit the letter written to Roe at Santa Barbara. This is the second point urged by appellants in support of their contention for a reversal, and it is designated as exception No. 10 in the transcript.

P. B. Cornwall, who was president of the plaintiff corporation during the transactions out of which the suit in question arose, was asked whether he ever had a conversation with the witness Lloyd relating to the thousand shares which were voted to him by the California Electric Light Company. It was stated by plaintiff's counsel that the purpose was to prove that he told Mr. Cornwall, as Lloyd had stated in his testimony, that he had divided the commission he received with Roe.

"*The Court.*—I want to know first, Mr. Cornwall, when this conversation occurred?

"A. It occurred between four and six months before Mr. Roe's death. I think it was in July, but it may have been about the first of August. It was a street conversation. Mr. Lloyd stopped me near the Merchants' Exchange, and spoke about selling me some electric light machinery. I did not care to buy. I had suffered through former connections, and it led to a conversation about the transactions he had had with the California Electric Light Company, and I think I put my hand on his collar and put it to him very squarely: 'Did

not Mr. Roe get a portion of that commission that you got from the California Electric Light Company, that thousand shares of stock?' He hesitated a moment, and answered that he got more than half of it. I was president of the California Electric Light Company during 1891 and some of 1892. I was president as long as I remained director. The negotiations between the California Electric Light Company and the Edison people went on for over a year, I think commencing before 1891."

The court overruled defendants' objections to this testimony, which is noted as exception No. 37 and the third point made by appellants in support of their contention for a reversal. The testimony was properly admitted to refute the assumption of defendants' counsel in the cross-examination of the witness Lloyd that the matter referred to had been concocted by Lloyd after the death of Roe and after his claim on the Roe estate had been rejected. The court below, as in the case of the letters already referred to, was careful to limit this testimony to this purpose.

The fourth point made by appellants in support of their contention for a reversal is based upon the admission of a letter from Lloyd to Cornwall referring to this conversation. In his cross-examination it appeared that, upon the death of Roe, Lloyd telegraphed to Cornwall telling him that Roe had died, and to await an important letter mailed the day before. On redirect examination the telegram was admitted in evidence, and an extract from a letter dated December 8th, two days before Roe died, was also admitted in evidence, which reads as follows: "Please consider this letter confidential, as you did a statement I made to you at the Merchants' Exchange in July of this year." This constitutes exception No. 42. As in the cases of the preceding letters and conversations, this was properly admitted for the purpose of refuting the charge assumed on the cross-examination that Lloyd had concocted the story after the death of Roe, and after his claim on the Roe estate had been rejected; and if in admitting this evidence, or in the reading of the letters in question, the jury in any way could have been influenced in returning their verdict, this would not justify a reversal. The case was in equity, and the verdict of the jury was at most only advisory to the court. The court in adopting the verdict of the jury

acted upon its own judgment, and in addition thereto filed its own findings and decision. The correctness of the decision of the court, and not the verdict as rendered by the jury, is the question to be determined here. (*Fisher* v. *Zumwalt,* 128 Cal. 493; *Schneider* v. *Brown,* 85 Cal. 205; *Sweetzer* v. *Dobbins,* 65 Cal. 529; *Richardson* v. *Eureka,* 110 Cal. 446; *Scheerer* v. *Goodwin,* 125 Cal. 154.)

In the fifth point made by appellants for reversal it is claimed that the evidence does not support the judgment in reference to the amount found due. In other words, that the judgment is in excess of the amount which should have been rendered. The commissions sued for were paid in stock, as found by the jury. The amount of the judgment was dependent upon the number of shares of stock. The court in its finding stated that the five hundred shares received by Roe were delivered in two lots, the first lot being four hundred shares out of a certain lot of seven hundred and eighty-six shares received by Lloyd from the plaintiff, and the second being one hundred shares, out of a lot of two hundred and eighty shares subsequently delivered by Lloyd to Roe. The evidence discloses that there was another deal between Lloyd and Roe by which Lloyd was to deliver to Roe three hundred and seventy-five shares of the same stock at the same price, one hundred dollars per share, and that expenses were incurred by Lloyd amounting to thirty-nine thousand dollars, one half of which was charged to Roe. In order to make up the amount of money that was due from Lloyd to Roe, counting the shares as money at one hundred dollars each, it is necessary to take the four hundred shares at forty thousand dollars, the two hundred and eighty shares at twenty-eight thousand dollars, and one half of the expenses, or nineteen thousand five hundred dollars, which makes a total of eighty-seven thousand five hundred dollars. The objection of the appellant is, that the court charged the expenses against the shares due to Roe upon the other transaction, the one not here in issue; whereas the appellants claim that it should have been divided between the two transactions, and a part of the expense charged against the other transaction and the remainder charged against the transaction here in issue, and hence it would not be in accordance with the evidence to charge one hundred of the last lot of two hundred and eighty shares against this

transaction, but that the evidence requires the charge of a somewhat less amount instead. It is evident, however, that if the one hundred shares of the last lot of two hundred and eighty shares was appropriated by the parties themselves to make up the total of five hundred shares due upon the transaction here in issue, the court would be fully justified in making the same appropriation and rendering judgment accordingly. There is evidence tending to show that the last one hundred of the five hundred shares was so appropriated out of the two hundred and eighty shares included in the last lot. Lloyd testified as follows: "Besides the delivery of the 400 shares of stock to Mr. Roe, I gave him 280 shares more. . . . The 280 shares were given to him to make up the half of the total commission made in New York and San Francisco, stating the amounts that I received from the California Electric Light Company at $100,000 and the amount that I received in New York at $75,000, amounting to $175,000." He then mentioned the items of expenses amounting to thirty-nine thousand dollars, and, continuing, said: "I gave Roe $71,000; $3,000 with my note and 680 shares of stock, or $68,000 in cash. The 680 shares was one half of the total net commission of $100,000 and $36,000." If the whole of the expenses—thirty-nine thousand dollars—was deducted from the seventy-five thousand dollars due by the other transaction, it would leave a remainder of thirty-six thousand dollars. This testimony seems to indicate that the five hundred shares was appropriated and delivered to Roe upon the transaction here in question without any reduction for expenses. He testified to other facts in connection with these which seemed to contradict this inference, or at least to show that the expenses should not have been so apportioned, but it was for the court below to determine what was the proper construction of this testimony, and the fact that it might warrant a different inference does not justify us in setting aside the verdict for want of evidence. We think it must be held that the evidence supports the judgment in this particular.

The judgment and order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.