[Crim. No. 667.  First Appellate District.—September 6, 1917.]

# THE PEOPLE, Respondent, v. WARREN K. BILLINGS, Appellant.

CRIMINAL LAW—CONFLICT OF EVIDENCE—APPEAL.—In a criminal action, the weight to be given to a conflict in the evidence is a question for the jury, and, in the absence of a showing of its inherent improbability and utter incredibility, the determination of the jury is conclusive upon the appellate court.

ID.—EVIDENCE — RELEVANCY — INCIDENTAL FACT.—In a criminal action, the relevancy of proffered proof depends upon whether or not it tends to sustain a legitimate hypothesis of the guilt of the defendant, and, generally speaking, an incidental fact is relative to the main fact in issue when, in accord with the ordinary course of events and common experience, the existence of the incidental fact, standing alone, or when considered in connection with other established facts, tends in some degree to make the main fact in issue certain, but it is not necessary that such incidental fact should bear directly upon the main fact in issue, for it will suffice as a pertinent piece of proof if it can be said to constitute a link in the chain of evidence.

ID.—MURDER—EXPLOSION OF BOMB—EVIDENCE—INCRIMINATING CIRCUMSTANCES.—In a prosecution for murder caused from the explosion of a bomb, where it was the theory of the state that the explosion resulted from the discharge by a clock device of a shrapnel dynamite bomb which, concealed and carried in a suitcase, was deposited by the defendant on the sidewalk of a city street just before the explosion, it was proper to admit in evidence, as circumstances tending to show the defendant's connection with the construction of the bomb, that a pistol loaded with certain caliber cartridges and a large quantity of loose loaded cartridges of varying caliber, many of which corresponded in caliber with the bullets found in the bodies of the victims of the explosion, together with two automobile ball-bearings, differing, however, in size from those found at the scene of the explosion, were discovered in the room of defendant shortly after he was arrested.

ID.—REBUTTAL OF ATTEMPTED IMPEACHMENT OF WITNESS.—In such prosecution, where the defense attempted to show that the testimony of the chief witness for the prosecution was of recent fabrication, it was not error to permit the state to show that the witness shortly after the explosion had made statements to several persons in substantial accord with his testimony.

ID.—ADMITTED BIAS OF WITNESS—CROSS-EXAMINATION WITHOUT PREJUDICE.—In such a prosecution, where a witness for the defense had admitted her bias and interest in the defendant and those jointly

indicted with him, it is not prejudicial error to permit the witness to be cross-examined as to such matter, where such cross-examination resulted in showing nothing more than the admitted fact.

ID.—ACQUAINTANCESHIP BETWEEN DEFENDANTS—TESTIMONY OF OFFICER —LACK OF PREJUDICE.—The testimony of a police officer to the effect that on one occasion, about three years previous to the trial, he saw two of the defendants in another city shake hands and hold a conversation is without prejudice, where an acquaintanceship between such defendants ante-dating such time was admitted.

ID.—CONVICTION OF DEFENDANT AS AN AIDER AND ABETTER OF CRIME— INSTRUCTION.—An instruction that even if the jury should find that some person other than the defendant placed the bomb, yet they should convict the defendant if they found that he aided and abetted such person, is not antagonistic to an instruction that it was the theory of the prosecution that defendant himself placed the bomb, where the evidence warranted a finding that he either placed it or aided and abetted the one who did.

ID.—STATEMENTS OF DISTRICT ATTORNEY IN ARGUMENT — DEDUCTIONS FROM EVIDENCE—LACK OF PREJUDICE.—Statements made by the district attorney in his argument to the jury which upon their face purport to be his deductions from the evidence are not prejudicial, where made in good faith.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—WAIVER.—Alleged misconduct of the district attorney in his argument is waived where the same is not assigned as misconduct in the trial court.

ID.—COURAGE OF DEFENDANT — COMPARISON WITH HYENA — LACK OF PREJUDICE.—The comparison of the defendant's conduct while testifying to that of a hyena, and describing it as the cowardliest and most disliked animal in the world, based upon the assumption that the defendant set the bomb, is not misconduct.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—RULE.—A new trial will not be granted for newly discovered evidence where such evidence is cumulative and only tends to contradict some of the witnesses for the prosecution.

ID.—CONFLICT OF EVIDENCE—REASONABLE DOUBT.—The mere fact that there is a conflict in the evidence does not establish that there are two hypotheses, one consistent with guilt and the other with innocence, so as to create a reasonable doubt.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

John G. Lawlor, Maxwell McNutt, and E. H. Lomasney, for Appellant.

U. S. Webb, Attorney-General, and John P. Riordan, Assistant Attorney-General, for Respondent.

THE COURT.—Near the hour of 2 P. M. on the afternoon of July 22, 1916, while a preparedness parade, formed for the purpose of displaying and developing the patriotic pride and spirit of the people of San Francisco, was passing at, or about, the intersection of Steuart and Market Streets in that city, an explosion occurred at that point which resulted in the death of several persons and the wounding of two score more who were viewing the parade.

The defendant Billings and several other persons were subsequently jointly indicted and charged with the crime of murder. The defendant Billings was separately tried. He was convicted of the crime charged, and the penalty therefor, life imprisonment, was fixed by the jury.

After having reviewed the evidence adduced upon the whole case which was wholly circumstantial, we are constrained to say that the contention of counsel for the defendant that the evidence does not sustain the verdict and judgment is not well taken, for it is rested solely upon a discussion of the weight of the evidence.

The contradictions and inconsistencies, if any, existing in the proof proffered and received in support of the people's case created no more than a conflict in the evidence and it was the peculiar province of the jury, when weighing the evidence, to reconcile such contradictions and inconsistencies with what they conscientiously believed to be the truth as developed by the evidence adduced upon the whole case.

It is the settled rule that the weight to be given to a conflict in the evidence—whether it appears in the case of the people or is made manifest by the proof proffered to support the defense—is a question to be determined in the first instance by the jury and, in the absence of a showing of its inherent improbability and utter incredibility, the determination of the jury is as matter of law conclusive upon this court. In other words, unless the evidence upon which a conviction rests appears to be so radically improbable as to amount to no

evidence at all, we are not permitted to examine it merely to determine the preponderance of its probabilities.

The argument of counsel for the defendant made to us upon this phase of the case is doubtless but a repetition of his argument made to the jury at the trial of the case, but needless to say the sufficiency of the evidence in the presence of a conflict therein to support the verdict may not be tested on appeal by the weight which the members of this court might have given to it had they been sitting as jurors on the trial of the case. Measured by the rule under consideration, we cannot say that the evidence does not support the verdict and judgment.

It was the theory of the prosecution that the explosion which caused the death of the deceased person for whose murder the defendant was being tried resulted from the discharge by a clock device of a shrapnel dynamite bomb which, concealed and carried in a suitcase, was deposited by the defendant Billings on the sidewalk at the place of, and shortly before, the explosion. Two ball-bearings of the kind used in automobiles and handfuls of loaded cartridges of varying calibers were picked up by bystanders immediately after the explosion and bullets of varying caliber were found in the bodies of several victims of the explosion.

As circumstances tending to show the defendant's connection with the construction of the bomb, the prosecution offered, and the trial court permitted in evidence, proof of the following facts: That a pistol loaded with certain caliber cartridges and a large quantity of loose loaded cartridges of varying caliber, many of which corresponded in caliber with the bullets found in the bodies of the victims of the explosion, together with two automobile ball-bearings, differing, however, in size from those found at the scene of the explosion, were discovered in the room of the defendant shortly after he was arrested.

The objection made to this evidence, seems to us, was directed merely against its weight. The relevancy of proffered proof in a criminal case depends upon whether or not it tends to sustain a legitimate hypothesis of the guilt of the defendant, and, generally speaking, an incidental fact is relative to the main fact in issue when in accord with the ordinary course of events and common experience the existence of the incidental fact, standing alone or when considered in connection with other established facts, tends in some degree to make the main fact in issue certain. It is not necessary that such inci-

dental fact should bear directly upon the main fact in issue, for it will suffice as a pertinent piece of proof if it can be said to constitute a link, however small, in the chain of evidence and tends thereby to establish the existence of the main fact in issue. (*Moody* v. *Peirano,* 4 Cal. App. 411, [88 Pac. 380].) Hence any fact is relevant evidence which naturally tends to show the means and method employed in the commission of a crime, and therefore it was proper in the present case to admit evidence of the identification of the cartridges picked up near the scene of, and shortly after, the explosion, and, having been so identified, they were rightfully admitted in evidence. (1 Michie on Homicide, pp. 856, 857.)

The fact that the cartridges found in the room of the defendant after the commission of the crime were of the same character and caliber of those found in the bodies of the victims of the explosion was admissible, as tending in a measure to show that the defendant had the means at hand to commit the crime charged against him in the manner and by the means which it was shown were employed to commit the crime. (1 Michie on Homicide, pp. 851, 855, 857, 859; 21 Cyc. 945.)

While it is true that no ball-bearings were found in the bodies of the victims of the explosion, nevertheless, the ball-bearings admitted in evidence were found, immediately after the explosion, in the midst of other things which, when considered in connection with all of the circumstances shown in evidence concerning the character of the explosion and its effects, apparently constituted a part of the bomb and were therefore admissible as tending in some degree to show what were the constituent elements of the bomb. In this connection it may be noted that "the tendency of modern decisions is to admit any evidence which may have a tendency to illustrate or throw any light on the transaction in controversy or give any weight in determining the issue, leaving the strength of such testimony or the amount of such weight to be determined by the jury." (*Moody* v. *Peirano,* 4 Cal. App. 411, [88 Pac. 380].)

The presence in evidence of the pistol found in the defendant's room came in as a mere incident to the testimony, which showed the result of the search of defendant's room, and, conceding that it was improperly admitted in evidence, we cannot conceive how it could have prejudiced the defendant.

The trial court did not err in its ruling permitting the prosecution to show in evidence that one McDonald, its chief witness, had made statements to several persons shortly after the explosion which were in substantial accord with his testimony given at the trial of the case. This proof was not proffered by the prosecution, nor permitted by the trial court, upon the theory, as counsel for the defendant contends, for the purpose of corroborating the testimony of the witness. The record shows that the evidence in question was offered and received for the purpose of showing that the testimony of the witness McDonald was consistent with statements made by him at a time when he was neither thought of, nor sought for, as a witness for the people. Its tendency was to rebut the inference which the defense sought to deduce from impeaching evidence to the effect that the testimony of the witness as given at the trial was of recent fabrication and the creature of corruption, and therefore was rightly received. (*Commonwealth* v. *Jenkins,* 10 Gray (Mass.), 485; *Yarbrough* v. *State,* 105 Ala. 43, [16 South. 758]; *California Electric Light Co.* v. *California etc. Co.,* 145 Cal. 124, [78 Pac. 372]; Wharton's Criminal Evidence, 10th ed., sec. 492; Wigmore on Evidence, secs. 1129, 1130.)

Counsel for the defendant has not directed our attention to any particular portion of the record in support of his contention that the defendant, when testifying as a witness in his own behalf, was prevented by objection or otherwise from giving an account of the movements of his codefendants on the day of the explosion. Ordinarily this would suffice to warrant us in ignoring the contention, but it may not be amiss to say that an independent investigation of the record discloses no basis for the contention, nor for the further contention that the trial court erred in refusing to permit the defendant to show all of the facts and circumstances connected with the meeting of the defendant and his codefendant, Mooney, which a witness for the prosecution testified occurred some three days prior to the explosion.

Complaint is made of the cross-examination of Mrs. Belle Hammerberg, a witness for the defense, whose testimony in substance was that the codefendants Thomas Mooney and his wife, Mrs. Rena Mooney, were on the roof of a building situated a considerable distance from the scene of the explosion during the entire afternoon of the day of the preparedness

parade. Substantially stated, the cross-examination of the witness consisted of an attempt to develop and disclose her interest in and bias for the defendants. It is now insisted that inasmuch as the witness had previously declared, and counsel for the defense had admitted, that she was greatly interested in the defendants, the prosecution was precluded from probing for the motives of her bias, and, in addition, that the real purpose of the cross-examination in the particular stated was to prejudice the jury against the defendant by creating the impression that the witness was suppressing evidence which, if revealed, would connect the defendants Mooney and Billings with the explosion. The cross-examination complained of resulted in showing nothing more than that the witness was interested in the defense and that she had received "some papers" or a "parcel of papers" from Mrs. Rena Mooney some time during the early part of the month of May or June.

Conceding it to be the general rule that when the interest of a witness in the result of a case is developed or admitted, as was done in the present case, the cross-examination cannot be legitimately continued for the purpose of showing the motive for such interest, nevertheless we are not prepared to say that the facts developed upon such cross-examination resulted in prejudice to the defendant, for it will be noted that the district attorney failed in his avowed purpose to show that the witness had concealed the papers referred to, and further, that neither the character of, nor the contents of, those papers were disclosed by the cross-examination. In fact, the only hint of the character of their contents is to be found in the admission of counsel for the defendant made during the course of an argument upon an objection to the cross-examination that they related "to certain matters of correspondence affecting the car strike." Conceding that this admission was provoked by the exigencies of the situation, nevertheless neither it nor the cross-examination itself revealed the particular car strike referred to nor the details of the correspondence. It will thus be seen that the cross-examination complained of resulted in showing nothing beyond the fact that the witness was perhaps biased in favor of the defense, which fact was admitted by her and by counsel for the defendant, and, consequently, it cannot be said that the error of the ruling permitting such cross-examination resulted in any prejudice to the defendant.

No prejudice resulted from the ruling of the court permitting Police Officer Kramer, a witness for the prosecution, to testify that on one occasion during the year 1913 he saw the defendant Billings in the city of Sacramento shake hands with and hold a conversation with the defendant Mooney. The avowed purpose of this evidence was to show a long-standing acquaintance between the two men. Whether that fact had any tendency to corroborate the testimony of the witness McDonald to the effect that he saw the defendant and Mooney together at the scene of the explosion and shortly prior thereto is of but little, if of any, consequence when considered in conjunction with the fact that counsel for the defendant announced in open court that "we concede that acquaintance long before and since that time."

Counsel for the defendant complains of and devotes a page of his brief to the alleged refusal of the trial court to give a certain requested instruction to the jury, but the record does not show that the instruction in question was not given. Moreover, the subject matter of the requested instruction was sufficiently covered in the charge of the court.

During the course of its charge the trial court instructed the jury to the effect that even though the jury should find that some person other than the defendant had feloniously placed the bomb at the scene of the explosion which resulted in the killing of the deceased, but further found that the defendant willfully and unlawfully aided and abetted such person and assisted him to obtain, manufacture, or explode said bomb, then the defendant Billings was a principal in the commission of the crime.

This instruction is assailed and asserted to be erroneous upon the ground that it did not limit, nor attempt to limit, the jury to a finding that the defendant personally performed the physical act of depositing the bomb at the place where the crime was committed. This contention is made and based upon the theory that the jury should have been so limited because the trial court had previously instructed them to the effect that it was the theory of the prosecution that a bomb was deposited by the defendant Billings at the place and with the intent and purpose charged in the indictment, and, because of this, it is argued that the defendant could not be found guilty in the absence of evidence warranting a finding that he

had personally placed the bomb "at the scene of the explosion and hence murdered the deceased by direct means."

These instructions, in our opinion, were pertinent to the evidence adduced upon the whole case which warranted the jury in its finding, implied from the verdict, that the defendant either personally placed the bomb at the scene of the explosion or aided and abetted the person who did. In this view of the evidence the instructions immediately under consideration were not antagonistic to and destructive of one another, for it is the law that "all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed." (Pen. Code, secs. 31, 971.)

With reference to those portions of the argument of the district attorney to the jury which were protested and assigned in the court below as misconduct, coupled with a request for an appropriate admonition to the jury, the record shows that the first assignment related in part to statements of the district attorney which upon their face purport to be his deductions, made apparently in good faith from the evidence adduced at the trial. This was legitimate argument, and could not properly be made the basis of an assignment of misconduct.

The remaining portions of the district attorney's argument covered by the first assignment of misconduct relate to his assertion that "the reason why they [the defense] objected to us showing the particular felony he [the defendant] has been convicted of is obvious." The record, however, does not show that this statement was assigned as misconduct in the court below, and, therefore, the misconduct, if any, might well be deemed to have been waived. But, assuming that there was no waiver and conceding the impropriety of the argument in the particular stated, it is difficult to conceive how the defendant could be prejudiced thereby in the face of the fact admitted by the defendant, while testifying as a witness in his own behalf, to the effect that he had suffered a felonious conviction in this state for carrying explosives.

The second assignment of misconduct has reference to the fact that the district attorney, in his argument, asserted in effect that the defendant, while testifying, laughed like a

hyena and apparently considered the charge against him a joke, and then proceeded to draw a comparison between the perpetrator of the crime and a hyena—"the cowardliest and most disliked animal in the world. . . ." Defendant's demeanor, while testifying as a witness, was a proper subject for the jury's consideration, and while the record, as a matter of course, does not disclose what that demeanor was, nevertheless we are not permitted to assume that it was willfully or at all misrepresented by the district attorney. His comparison of the defendant's courage with that of a hyena, based as it was upon the assumption that the evidence showed him to be the perpetrator of the crime, obviously was peculiarly pertinent, and therefore permissible, even though it did involve a denunciation of the defendant as the perpetrator of the crime, for as was said in the case of *People* v. *Glaze,* 139 Cal. 154, [72 Pac. 965] : "A defendant on a trial for murder is not entitled as of right to be spoken of as if he were an innocent man in an argument by an officer who is endeavoring to show that the evidence proves his guilt."

Complaint is made of the failure of the trial court upon request to admonish the jury to disregard statements made by the district attorney when making an offer to prove by a witness present in the courtroom that the defendant had said that he was skilled in the making of bombs and had thrown them for hire. The objection to this offer was sustained, and, without regard to whether or not the proffered proof was relevant and competent, the district attorney was privileged, in good faith, to state what he expected to prove. In so far as the record shows, the offer in question was not made in bad faith, and it not appearing that the district attorney was guilty of pernicious and persistent misconduct throughout the trial of the case, we are of the opinion that the request for an admonition to the jury to disregard any suggestions contained in the offer was sufficiently complied with in the charge of the court, which, in part, instructed the jury that under their oaths they were "to take into consideration only such evidence as had been admitted by the court, and . . . disregard and discard . . . every impression or idea suggested by questions asked by counsel which were objected to and to which objections were sustained."

It is insisted that the trial court erred in denying the defendant's motion for a new trial grounded, in part, upon al-

leged newly discovered evidence. The alleged newly discovered evidence offered upon the hearing in support of the motion was, in our opinion, merely cumulative, and tended to do no more than contradict some of the witnesses who had testified for the people upon the trial of the case. It is a well-settled rule of law that newly discovered evidence of that character will not suffice to warrant the granting of a new trial.

Concluding this discussion of each and every point made in support of the appeal, we are constrained to say that a perusal of the record before us which contains the argument of counsel for defendant compels the conclusion that the defendant was accorded a fair trial before a fair judge and a fair jury, and this conclusion is confirmed by the concession of counsel for the defendant made in his closing argument to the jury wherein he said: "We have had a fair trial—'We've had our trial, and must needs say a noble one.' We've had our trial and we proclaim to the world that it has been a fair and noble one. This jury was impaneled by a member of the district attorney's staff with absolute fairness and impartiality—a man who asked only what we asked, and only what we ask now—justice!"

The judgment and order denying a new trial are affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on October 2, 1917, and the following opinion then rendered thereon:

THE COURT.—In their petition for rehearing of this cause appellant's counsel repeat their arguments considered and passed upon in the opinion delivered in this case. Their petition in this respect presents nothing new. The propositions which they re-advance were given careful consideration, and this court sees no reason to change the views which it has expressed upon them.

Concerning two matters, however, the petition makes a complaint which calls for response. The first of these is that appellant has contended that there is a "complete insufficiency of the evidence, admitting its entire truth for the purpose of the argument, to sustain a verdict of guilty of murder." It is said that this contention requires of this court something more than a declaration that the evidence is sufficient—it de-

mands a presentation of the evidence which this court declares to be sufficient. As appellant's counsel thus urgently insist upon a statement of this evidence, it will be given.

The prosecution introduced evidence showing that a high explosive concealed in a suitcase was, on the occasion of the preparedness parade in San Francisco, placed against a building at the southwest corner of Steuart and Market Streets, about twenty feet from the corner of Market. The junction of Market and Steuart Streets is near the ferry building, at the foot of Market Street. On Steuart Street and other similar connecting streets at the lower end of Market Street the units of the parade were to form and enter the parade, which was programed to proceed out Market Street. Such a unit of the parade was standing on Steuart Street. The sidewalks were crowded with innocent spectators. This infernal machine was so constructed that by a clock-work device it would explode at a given time. The time when this explosion actually took place was six minutes after 2 P. M. The force of the explosion was terrific. Men were blown from their horses and people "fell to the ground like matches." Nine or ten people lost their lives. Nearly fifty others were mutilated and mangled. The devilish ingenuity which constructed this infernal machine did not rest content with placing in it the explosive alone. It was filled with pistol cartridges, with pieces of iron pipe and with steel balls like unto the ball-bearings of automobiles. From the debris of the explosion and from the bodies of the dead and wounded many of these articles were discovered and introduced in evidence. So, also, were introduced in evidence bits of brown papier-mache from which cheap suitcases are made, and, in the language of appellant's counsel, "some clasps or locks or other things affecting the suitcase." That this destruction of life and property was criminally caused by the criminal means indicated, the evidence leaves in not the slightest doubt.

The crime having thus been established, the next inquiry is, Does the evidence sufficiently connect this defendant with the crime as the perpetrator, or one of the perpetrators thereof? The fact that the suitcase which exploded was placed by this defendant does not rest upon circumstantial evidence alone. A witness testifies directly to having seen the defendant with the suitcase in his hand at about ten minutes before 2 o'clock at Steuart and Market Streets. The defendant was looking

about him so that the witness thought that he had either stolen the suitcase or was playing a joke. He was joined by another man at the door of the saloon. They looked at their watches. They looked at the clock on the near-by ferry building tower, and the defendant disappeared in the crowd on Steuart Street. Another witness saw the defendant a few minutes later without a suitcase near the corner of Mission and Steuart Streets, less than one block away from the spot where the suitcase had been placed. He heard the explosion. After this, and to prevent a panic, "the band was started up and played 'the colors'; and everybody took their hats off but the defendant and the man that was with him. A man in the crowd says, 'Take your hat off.' He paid no attention but he turned around and walked away." Numerous other witnesses saw this defendant with this suitcase elsewhere in San Francisco about or after 1:30 and shortly before his presence at Steuart and Market Streets. In particular, he was seen with this suitcase at 721 Market Street, less than four-fifths of a mile distant from the junction of Steuart and Market Streets. He was there seen by Herbert Wade, principal of a school in Hawaii, by Earl Moore, a police officer, by Peter Vidovich, a retired business man, by Mrs. Nellie Edeau, a dressmaker, and by Miss Sadie Edeau, her daughter. Mrs. Edeau further testifies that she saw him standing with a woman and a man, the defendant holding the suitcase in his right hand and saying in an excited tone, "We have to make the ferry before 2 o'clock." Miss Estelle Smith, an attendant in a dentist office in the building at 721 Market Street, saw and accosted the defendant just outside of the dental rooms. The defendant asked permission to go on the roof to take pictures, saying that he represented a San Francisco newspaper, the "Chronicle." He looked worried and ill and said that the heat had made him sick. She went to pick up the suitcase for him and he said. "My God, don't touch that!" She jumped and said, "You scared me," and he replied, "You will strain the lens in my camera." As he seemed distressed she asked him to go into the dental waiting-room and sit down, and he replied, "I can't take advantage of your kindness. I have friends waiting for me downstairs." Another witness, Rominger, testified that he assisted this defendant with this suitcase to the roof of the building. The suitcase was very heavy,

34 Cal. App.—36

weighing as much as thirty pounds. There was no photographer's outfit with the case—neither kodak nor tripod.

When the defendant was arrested his room was searched and in his room was found a can of bullets and pistol cartridges like those placed in the infernal machine. Automobile ballbearings were also found in his room. The defendant admitted that this can and its contents were his property, and said that he "used them when it was thought necessary." Asked where he bought them, he said he did not remember.

More than this, it was proved that the defendant had suffered conviction and imprisonment in the courts of California for a felony of similar character, though resulting in no such direful consequences as the felony for which he was here put upon trial. He was convicted of carrying high explosives on a street-car and suffered imprisonment for two years in the state penitentiary at Folsom. Further, it was shown that he had dynamite in his possession in the city of Sacramento, and after his arrest, when asked about it, said that he would not talk until he had seen his attorney. And, finally, the defense amounted to this: The defendant offered his own unsupported declaration against the testimony of all of these witnesses, that he never had a suitcase in his possession upon the day of the parade, and also his own unsupported declaration as against the testimony of these witnesses, that he was neither at nor in the neighborhood of 721 Market Street, nor at nor in the neighborhood of Market and Steuart Streets upon that day. He gives an account of his rambles about the city from about 1:15 P. M., when he left his lodging-house, till about 3 P. M., when he entered a jitney, but during all that intervening time there is not one witness who testifies that he saw the defendant where the defendant says he was, so that the alibi, as against the positive and direct statement of disinterested witnesses, rests wholly upon the testimony of the defendant alone. To sum up, then, we agree with appellant's counsel in their first judgment on the case when they "proclaimed to the world" that the trial "had been a fair and noble one," and we wholly agree with the declaration of the learned attorney-general that "the evidence overwhelmingly establishes the guilt of the defendant."

The second proposition which appellant's counsel urge upon our attention as having been omitted from the consideration of the case in the opinion handed down is, to quote their own

language, the following: "The point was made by us that the evidence in this case showed that there were two hypotheses, one consistent with guilt and the other reasonably consistent with innocence, and that hence a reasonable doubt arose as a matter of law, and we were accordingly entitled to a reversal." In plain English, this seems to mean that if A testifies that he saw B shoot C and B testifies that he was not at the place of the shooting, there necessarily arises "two hypotheses, one consistent with guilt and the other reasonably consistent with innocence," and therefore every defendant who offers evidence of an alibi must go free. The simple statement of the proposition shows its absolute unsoundness. But in addition to this, the law has disposed of this proposition against appellant's position in so many cases that even to cite them would seem to be superfluous. However, a few may be mentioned. "When there is evidence, therefore, to sustain the verdict, a question of law cannot arise." (*People* v. *Fitzgerald,* 138 Cal. 40, [70 Pac. 1015].) "If we find any evidence in the record from which a rational inference might be drawn that defendant fired the fatal shot, our inquiry as to this feature can go no further." (*People* v. *Bond,* 13 Cal. App. 182, [109 Pac. 154].) "If the evidence which bears against the defendant, considered by itself and without regard to conflicting evidence is sufficient to support the verdict, the question ceases to be one of law and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive." (*People* v. *Emerson,* 130 Cal. 563, [62 Pac. 1069].) "Undoubtedly the defendant's own story exculpates him, but it was for the jury to say whether or not that story should be believed. The evidence was therefore sufficient to justify the verdict." (*People* v. *Rongo,* 169 Cal. 75, [145 Pac. 1019].)

The evidence adduced upon behalf of the people, having been accepted as the truth by a jury impaneled, as counsel for the appellant concedes, "with absolute fairness and impartiality," was sufficient in itself to support the verdict.

The petition for a rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 5, 1917.