WILLIAM W. MOONEY ET AL. V. EGBERT J. DAVIS, ASSIGNEE, AND THOMAS DUDLEY.

*Fraudulent sale—Statements made to commercial agency—Account-books—Evidence—Failure of person charged with fraud to be sworn—Charge to jury—Fraudulent representations—Intent.*

1. Copies of statements made by its agents to a commercial agency of what a merchant stated to them as to his financial standing, which were written down by them at the time, and which the testimony tends to show were subsequently approved of by the merchant, are admissible as evidence in favor of creditors who claim to have been defrauded by such representations.

2. It is the duty of a merchant who has furnished statements to commercial agencies of his financial standing for the purpose of gaining credit to give them notice of any material change for the worse, to the end that persons with whom he has commercial dealings may not be misled as to the extent of credit they may safely give him.

3. Statements made by an accountant from account-books, in evidence without objection, showing, as claimed, the condition of the owner's business at a given date, are admissible in evidence in connection with said books.

4. The *presence* of a defendant at the trial of a suit involving his alleged fraudulent representations as to his financial condition, which charge he was at liberty to refute by his own testimony if untrue, and did not do so, is a fact patent to the jury, and an instruction by the court that the plaintiffs were entitled to this circumstance in their favor is not erroneous.

5. The concealment of or misrepresentation as to the real financial condition of a vendee need not be willful nor intended in order to constitute such fraud as will vitiate a sale made in reliance thereon. It is sufficient if they have the effect to defraud.

Error to Wayne. (Reilly, J.) Argued April 5, 1889. Decided June 14, 1889.

Replevin for leather claimed to have been fraudulently purchased. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Corliss, Andrus & Leete,* for appellants.

*Bowen, Douglas & Whiting,* for plaintiffs.

SHERWOOD, C. J. Until March 10, 1886, the defendants did business in Detroit, as Dudley, Davis & Co. They were engaged in the wholesale leather and findings business. On that day Dudley succeeded this company, and took its business as such successor, and under the name of the Standard Leather Company carried it on until January 7, 1888, when he made a general assignment to his former partner, E. J. Davis.

The plaintiffs were engaged in the tanning and harness leather business at Columbus, Indiana, in August, 1887. Mooney & Co. received an order from Dudley in July previous for some leather, and on making inquiry at Dun & Co.'s agency for the financial standing of Dudley, and upon the plaintiffs receiving a favorable report, upon which they relied, they filled said order on the fifth of August. It is claimed, and the undisputed testimony shows, that the report made by Dun & Co. was based upon the verbal statement of Dudley to Dun & Co.'s agent, from which the rating was

made, and which was made in March, 1886, and was to the effect that the defendant's assets then amounted to $39,882, and a mortgage indebtedness upon the real estate of $3,500.

The second sale and shipment of leather was September 9, 1887. In this month the plaintiffs obtained a statement from the agency, and received the same report as in July as to Dudley's financial condition, and it is claimed that it was upon this last report the second shipment was made. Both of these bills were paid for, and none of the goods purchased upon these sales are now claimed for.

In December, 1887, Dudley wished to buy more leather, and at this time plaintiffs consulted Bradstreet's agency as to his financial standing, and obtained a special report, and on this, together with what they had learned through Dun & Co.'s agency, plaintiffs, on the twelfth of the month, sold to Dudley, as they claim, the third bill of goods, amounting to $411.86; and these goods are those for which the present suit is brought in replevin. Dudley's schedules to his assign- ment showed his assets at the date of that instrument to be $6,377.99, and his liabilities, $9,959.46.

This suit was commenced immediately after the assign- ment became known to the plaintiffs, to recover the goods sold in December, 1887, who claim that the fraudulent rep- resentations made by Dudley as to the credit of himself are sufficient to vitiate the sale of this bill of goods, and to entitle them to a return of their property.

Mooney testified that in making the sale to Dudley his firm made inquiries of Dun's and Bradstreet's agencies, and that in making the last sale they relied upon the reports obtained from them; and the agencies averred that their source of information upon the subject was obtained from Dudley in the statements he gave to their agents.

The plaintiffs were subscribers to the commercial agency of R. G. Dun & Co., and the statements made by Dudley to Dun's agent as to the amount of defendant's property are

not denied by any one. In the testimony of Bradstreet's agent he says he had a personal interview with Dudley as late as June 17, 1887, in which the latter referred to the statements made to both agencies in March, 1886, and said that there was no material change in the defendant's financial condition from the report then made, and the defendant's rating at that time was from $25,000 to $30,000, and his showing was that he had a surplus of over $36,000.

The books of the defendant were offered in evidence, from which testimony it would appear that Dudley was insolvent at the time the goods in question were purchased.

The defendants offered no testimony upon the trial, and the plaintiffs obtained judgment for the property, with one dollar damages.

The defendants bring the case into this Court, and ask for a reversal of the judgment, assigning 22 alleged errors as grounds therefor.

The principal question in the case is, were the goods in question obtained by the false representations and fraud claimed by plaintiffs?

No question is made upon the pleadings; and, if the defendant Dudley committed the fraud in question in making the purchase, the title to the goods never passed, and the suit was well brought. There was testimony given by the plaintiffs tending to show the misrepresentation and fraud alleged, and the jury have found for the plaintiffs, and it only remains to be seen whether the testimony by which the fraud of the defendant was made to appear was competent, and properly admitted.

It is claimed by defendants that the court erred in admitting copies of the statements of the financial condition and ratings of Dudley made by the agents of Dun & Co. and Bradstreet. We find nothing objectionable in this. It must be recollected that these statements were made by these agents as given verbally by Dudley. They were only statements given by these men of what Dudley told them, and written down at

the time.  The copies offered are of the same kind of evidence as those made at first, but of a different grade.  Either was admissible.  Neither was ever signed by the defendant, and, but for the testimony subsequently given tending to show his approval of the same, neither would have been admissible.

We further think the testimony tending to show defendant Dudley's approval of these statements was so recent before the sale in question that he must be held bound thereby, or at least, if there had been any material change in his financial standing after the statements were given, he should have notified the agencies to whom the information was given, that persons with whom he had commercial dealings should not be misled as to the extent of the credit they might safely give.

These agencies have become almost a necessity in the transaction of commercial business, and the rules by which they are governed, and the information they gather and impart, are well known to business and commercial men generally, and such information is perhaps more frequently relied upon among such men than that obtained from all other sources, and courts cannot shut their eyes to these facts; and the changes in Dudley's business relations we do not think were such as to affect the question now under consideration.  The responsibility and the amount of assets over liabilities available for business purposes, or from which money could be realized for the exigencies of business, were the important questions presented to the creditors, and upon which they made sale of their property.

We think the views here expressed are fully supported by the authorities cited by counsel in their briefs upon both sides, and they need not be herein more definitely referred to.

We see no objection to the use made of the statements taken from the books of Dudley, so long as the books themselves were in evidence, and the record informs us that they

were, and without objection.[1] Dudley was in court, and was made to attend upon a subpœna by the plaintiffs, but neither party examined him. In the court's charge to the jury he said, among other things:

"Mr. Dudley has been in court during this trial. He knows all about the facts, and he knows whether he has made these representations to the reporters of these agencies or not. He has not deemed it proper to go upon the stand and contradict that in any way, and has remained silent during this trial. That may be considered by you as one of the facts in this case, as to whether the position of the plaintiffs is in accordance with the facts."

The court committed no error in this charge. The fact that the defendant was at the trial, and was at liberty, by his own testimony, to refute the principal facts, if untrue, upon which the fraud was claimed, and did not do so, was a fact patent to the jury, and was not without some effect, and the plaintiffs were entitled to the circumstance in their favor, and this was in substance the charge of the court upon this point.

The defendants' counsel presented the following requests, all of which were refused:

"1. The plaintiffs, in order to recover in this case, must prove that fraud existed on the twelfth day of December, 1887, when this purchase was made, either by willful concealment or misrepresentations of facts by Mr. Dudley, and unless the plaintiffs have established one of such facts they cannot recover.

"2. The defendant E. J. Davis, assignee, is entitled to recover in this case for the value of the goods replevied, $318.08, with interest since January 14, 1888, at 6 per cent., unless you find that the goods were purchased by Dudley December 12, 1887, with intent to defraud the plaintiffs.

"3. Even if you should find from the facts that Dudley

[1] The witness testified that he was an accountant, and familiar with book-keeping and taking details from books; that he had examined the books in question, with reference to the condition of Mr. Dudley's business at a certain date; and such statements were admitted in evidence in connection with said books, which had been received without objection.

was in fact insolvent December 12, 1887, when the goods were purchased, that would not be sufficient for plaintiffs to recover, unless you also find that Dudley knew it, and made the purchase knowing that he could not pay for them, and with intent to defraud plaintiffs."

The court did right in refusing these requests.

As regards the first, neither the concealment nor misrepresentation need be willful or intended in order to constitute the fraud which will vitiate the contract. It is sufficient if they have the effect to defraud.

The second and third requests have each the like infirmity.

Counsel for defendants, at the close of the charge, asked the court orally to charge that—

"If they find intent to defraud on the part of Dudley, they must find it existed at the time of the purchase of December 12."

Instead of so charging the court said to the jury:

" As to that, gentlemen of the jury, if you believe from the evidence in this case that Mr. Dudley represented himself in March, 1886, to be worth $36,000 or $37,000 over and above his liabilities, and permitted that statement to remain upon the books, and these commercial agenc'es reported that statement, as it is claimed on behalf of the plaintiffs, down to September, 1887, and these were made, and sales were made by the plaintiffs in December, and the representations as to his financial condition were untrue, you may infer from that the intent on the tenth day of December, 1887, that he purchased the goods not intending to pay for them, and that they were purchased under said fraudulent representations as avoided the contract."

Counsel for defendants, Mr. Corliss, then asked the court to further charge the jury that they cannot assume that the representations made were false, or that any statements that were made were false, except upon positive proof. The court then said further to the jury:

" You may take into consideration the facts in determining that, and you may consider it, gentlemen; you may take into consideration the fact that in September, 1887, as

claimed by the plaintiffs, the financial condition of Mr. Dudley was represented to them as being the same as it was a few months preceding,—that he had $37,000 over and above his debts and liabilities. Take into consideration the fact that on the seventh day of January, 1888, he failed for several thousand dollars over and above his assets. Take into consideration his financial condition as reported to the commercial world in September, as being as I have stated, and that on the fourteenth day of January, 1888, he failed, showing the liabilities of $3,000 or $4,000 over and above his assets; and, there being no explanation from Mr. Dudley as to what has become of his capital of $36,000 from September to January, you are justified, if you believe that evidence, to find that the defendant was guilty of fraud when he ordered these goods on the twelfth day of December, 1887."

These last refusals and charges were excepted to by defendants' counsel. They were not much argued at the hearing, and not at all in brief of appellant, and we will only say we see nothing in them seriously objectionable, when taken in connection with the other portions of the charge.

We do not think the testimony given by Mr. Foster, nor what the court said while said witness was upon the stand in relation thereto, as to what the testimony did not show as to Dudley's continuing in business, of a character to prejudice the interests of either party, and the exception relating thereto is not well taken.

No error appearing in the record, the judgment will be affirmed.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred.

MORSE, J. (dissenting). The evidence in this case shows that the statement of the financial condition of Dudley in 1886 was obtained by one William G. Pungs for R. G. Dun & Co.; that Pungs personally visited Dudley, and procured this statement. I do not think that a merchant who is visited by the agents or attaches of a mercantile agency, whether it be R. G. Dun & Co.'s, Bradstreet's, or any other, and who, at

their request, gives to them a statement of the condition of his business, is bound thereafter to notify such agencies of the financial or other changes in his business; nor is he obligated to inform them if afterwards he is on the verge of bankruptcy, or unable to pay his debts. To so much of the opinion of the Chief Justice as tends in that direction I must dissent.

If a merchant should seek out an agency or its reporters, and give a statement for the express purpose of building up a credit thereon, the case would be different. But a merchant doing business without regard to these agencies, as he has a right to do, who is sought out by such agencies or their employés, and a statement demanded of him, and who in good faith frankly and honestly tells them his business condition, although under no legal obligation to do so, is not thereby bound forever afterwards to keep such agencies informed of his financial standing, any more than he would be had he made a statement to some person not connected with such agencies.

I also think there was error in admitting in evidence a copy of the report in 1886 of the financial standing of Dudley from the books of R. G. Dun & Co. It was not proven that the verbal statement of Pungs of his conversation with Dudley in 1886 was correctly transcribed upon the books of Dun & Co., or that the copy offered in evidence was a true copy of the statement as it appeared upon the books of Dun & Co. Pungs himself testified that all he could remember about the statement was that he went and saw Dudley and had a talk with him. Under such a state of proof the copy was incompetent as evidence.

Thecase ought to be reversed, and sent back for a new trial.