[Crim. No. 563. Fourth Dist. Apr. 25, 1945.]

THE PEOPLE, Respondent, v. GORDON LEE GOULDY, Appellant.

David E. Peckinpah and Harold M. Child for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, James M. Theusen, District Attorney, and Robert M. Wash and Clarence L. Kincheloe, Deputies District Attorney, for Respondent.

GRIFFIN, J.—On April 29, 1944, defendant and his wife, with their baby, drove in their car to a store in Fresno, and while there purchased some wine. On the return trip they quarreled. During this quarrel defendant slapped his wife. After they arrived back home, while in the kitchen, they quarreled again. Defendant struck her in the face and knocked her against the wall. She fell to the floor. He helped her up and the quarrel continued. He again struck her, causing her to fall to the floor a second time. He picked her up once more. Shortly thereafter, the parties left the residence in their car and traveled west on Tulare Street. Later, defendant's wife was seen lying in the road unconscious. Defendant was stopping the traffic. A passerby assisted defendant in placing his wife in his car. She was taken to the hospital and within ten minutes died without regaining consciousness. She had a basal fracture of the skull. Defendant, after trial by jury, was convicted of violation of section 245 of the Penal Code, i. e., committing an assault upon the person of another by means of force likely to produce great bodily injury. Defendant appealed from the judgment that followed and from an order denying a motion for new trial.

It is first argued by defendant that the evidence is insufficient as a matter of law to support the verdict and judgment. The main argument on this subject is that the corpus delicti was not established independently of the statements of the defendant, citing such cases as *People* v. *Lamson*, 1 Cal. 2d 648 [36 P.2d 361]; *People* v. *Bowers*, 79 Cal. 415 [21 P. 752].

The medical testimony shows that there was a small laceration on the back of the head of the deceased and burn-like injuries on her back and certain bruises on her face; that those bruises ''while they could have been caused by falling out of an automobile, also could have been caused either by a fist or blunt instrument of some kind.'' The autopsy surgeon, after describing in minute detail the results of his examination, testified that the cause of death was a ''basal fracture of the skull with intracranial hemorrhage of subdural type. Multiple abrasions and contusions . . .''; that the injuries disclosed were of several different types; that there were abrasions, contusions and ''lacerations where the tissues were torn, and there were definite friction type burns of the skin.'' He testified that ''In taking these all together, I don't think any-

one could say that they all occurred practically simultaneously" and in his opinion the bruises on the face were caused more than an hour before death. He testified that the immediate cause of death was a basal fracture of the skull caused by force exerted over the vertex or top of the skull and that he found no friction burns on the scalp at the point where the force had been exerted; that he found no sand, straw or foreign substance in the hair; that in his opinion the fracture occurred more than 35 minutes before death and that the deceased would not necessarily have been rendered unconscious by the blow that caused the fracture.

A deputy sheriff testified that defendant stated in his presence immediately after the death of his wife that, while in the kitchen, he had hit his wife in the face twice, knocking her down each time. When asked the question whether or not defendant stated he used his hand or fist the witness answered "At one time he admits using the fist. The second time he got up on his feet and illustrated by holding the baby in his left arm. Quoting him, 'I had a bottle of wine in my right hand. I took a drink. She said something. I seen red. I hit her again.' Right there he said, 'What the hell am I saying? I must have hit her with my fist. I didn't hit her with the bottle.' We let it go at that. 'She then fell down the wall, sliding down the wall.' . . . 'The only place she could possibly have hit the back of her head was the edge of the mop board.' He was asked if there was any blood there. He thought for a little bit. He said, 'If there had been, if there were any blood it must have come from her nose or mouth as her lips were swollen.' "

Another deputy sheriff testified in relation to the possible use of a wine bottle, that defendant said " 'I was standing with Jimmie in this arm, and I was just going to take a drink of wine when she called me a ———— ————' and he says, 'I hit her. . . . But I didn't hit her with the bottle I don't think.' . . ."

Defendant testified that after purchasing some wine and whiskey at the store, they drove around in the park; that his wife got out of the car, drank some wine, and spilled some of it on her dress; that on the way home they had a quarrel and she turned off the switch and defendant hit her across the mouth with his hand; that when they arrived home and while in the kitchen they became angered again and he slapped her

and knocked her up against the wall; that she slid down to the floor; that he helped her up; that she cursed him and he thought she was going to scratch him so he struck her again with the back of his hand and she fell to the floor; that afterwards her mouth was swollen and bruised; that she decided to go to Seattle to her parents; that she picked up her suitcase and walked out to the car with him; that as they were driving to town, at a speed of approximately 35 miles per hour, his wife suddenly said that she was going to commit suicide; that she opened the car door and jumped out; that he flagged down two passersby and took his wife to the hospital as fast as he could.

Defendant's grandmother testified that as Mrs. Gouldy was leaving the house after the struggle or fracas in the kitchen, she walked out to the car; that she was crying and that she, the grandmother, asked the defendant what was the trouble and that he replied "I am not telling nothing"; that after Mrs. Gouldy's death defendant called her to the hospital. She then testified that immediately thereafter, about 1:30 a. m., she returned to the home; that although there was no blood on the kitchen floor she mopped up the floor and scrubbed it anyway.

There was testimony that at least on one other occasion Mrs. Gouldy jumped or fell from a moving car while she was in an intoxicated condition.

Defendant produced expert medical testimony, based upon the report of the autopsy surgeon and other facts testified to at the trial. This opinion evidence was to the effect that the deceased could have received all of the injuries indicated as the result of a fall from a moving car.

From the foregoing testimony the jury was justified in finding that the defendant, in the kitchen, assaulted his wife by striking her in the face twice, each time with sufficient force and violence to knock her up against the wall and that as the result of those blows she fell to the floor. From defendant's own statement, it might be reasonably determined that defendant was holding the baby in one arm and struck his wife with the other hand while holding the wine bottle in it. From this evidence, when considered in connection with the medical testimony of plaintiff, the jury could have been justified in finding that defendant struck the deceased with the bottle, notwithstanding his denial of that fact. While

it is not entirely necessary to support the verdict, it would appear that the jury might have been justified in finding that the basal fracture of the skull which actually caused the death of the deceased was inflicted by the defendant at the time of the assault in the kitchen, or it might well have determined that the fracture was due to a fall from the moving automobile. This was a factual question for the jury and its determination will not be disturbed on appeal. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].)

■ Originally, the defendant was charged with the crime of murder. He was held to answer and prosecuted on a charge of assault by means of force likely to produce great bodily injury. Forms of verdicts were given to the jury based on the charge set forth in the information as well as the included charge of simple assault. The question here presented for the jury was not whether an assault was committed, for such was admitted by the defendant in his testimony in open court, but the question was whether or not the assault was one by means of force likely to produce great bodily injury. The jury was amply justified in its finding that it was. The evidence was sufficient to establish the corpus delicti. The reception of defendant's confessions or admissions into evidence was not error. It is not necessary for the purpose of satisfying this particular rule to establish the corpus delicti beyond a reasonable doubt or even by a preponderance of the evidence. (*People* v. *Jones,* 123 Cal. 65 [55 P. 698] ; *People* v. *Dawes,* 37 Cal. App. 2d 44 [98 P.2d 787] ; *People* v. *Kelly,* 70 Cal.App. 519 [234 P. 110] ; *People* v. *Clark,* 70 Cal.App. 531 [233 P. 980].) The evidence is sufficient to support the verdict.

Judgment and order affirmed.

Barnard, P. J., and Marks, J., concurred.