[Crim. No. 5775.   Second Dist., Div. One.   Mar. 12, 1957.]

THE PEOPLE, Respondent, v. FRANKLIN EUGENE
PETERS, Appellant.

Gladys Towles Root, Eugene V. McPherson and Joseph A. Armstrong for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction on a charge of forcible rape under the provisions of section 261, subdivision 3, of the Penal Code.

In an information filed by the district attorney of Los Angeles County, appellant was charged, with his codefendant, James Henry Smith, of forcibly raping Catherine J. Stevens on or about December 7, 1955. Appellant pleaded not guilty, and after several continuances, by stipulation, the People's case was submitted on the transcript of the preliminary hearing. The court appointed a doctor, pursuant to the provisions of section 1871 of the Code of Civil Procedure, to examine Catherine J. Stevens and to ascertain if her health would be impaired by coming to court and whether she was mentally competent to testify. A motion by the appellant was made to strike all of the testimony of the complaining witness and such motion was granted, it having been stipulated that a medical report relating to her condition could be considered.

The facts of the case are substantially as follows: On December 7, 1955, about 3:30 o'clock a. m., a police officer of Montebello observed a car coming from the hills of that vicinity. There was only one headlight burning on the automobile and the officer followed the car a short distance and then stopped it. He observed that the appellant Peters was driving the two-door sedan automobile, and the codefendant Smith was riding in the front seat, and Catherine J. Stevens occupied the rear seat. When the officer first saw the lady she was trying to push the front seat forward and climb out of the vehicle. She appeared to be quite elderly, grey haired, about 5 feet 2 inches tall, and to weigh about 110 pounds. Her face, nose and arms were bruised. The appellant and his codefendant were both youthful. The officer questioned Peters as to the identity of the lady in the back seat, and Peters stated that she was Smith's grandmother by marriage. When asked what her name was, neither Peters nor Smith could or did tell him her name. The men were then directed to get out of the automobile and they were separated. When appellant and Smith were within 2 feet of Catherine J. Stevens, while they were being brought back to the auto-

mobile, she said of the appellant, "That is him . . . That is him with the brown hair."

A second officer arrived at the scene of the stopping of the car and the arrest, pursuant to a call for assistance. In the back seat of this officer's automobile unit, which was parked across the street, the appellant talked with the officer freely and voluntarily and told about how he, the appellant, and Smith had been on Main Street in Los Angeles "trying to find something . . . looking for a woman, and when they were coming back they saw Mrs. Stevens standing on the corner of 4th and Alameda. They asked where she was going and she said home, and they said they would take her, and he told me at first that she was Smith's grandmother." The officer testified further that: "Then finally he broke down and he said that they had taken her to the hills, and that he had had sexual intercourse with her."

The lady was then taken to the hospital where a medical doctor of many years experience examined and observed her. The doctor testified that she was an elderly lady, not very large, about 80 years of age; that he saw bruises on the face and the nose and the arms, and there was a moderate amount of vaginal bleeding—that is, such an amount as would stain the clothing and the skin. Because of the fact that she was to be taken to the General Hospital for appropriate treatment, the doctor did not make an internal vaginal examination.

About half an hour after the officer first stopped the automobile the appellant and Smith were in the booking office of the police station and, freely and voluntarily, the appellant stated to the first officer that he had picked up the lady at Fourth and Alameda, had driven her to the hills of Montebello and had had an act of sexual intercourse with her, in the rear seat of the car, and that Smith had remained in the front seat. Later on, in the morning, about 10:30 o'clock a. m., a lieutenant of the police department talked with the defendants at the police station. The statements made were freely and voluntarily given and the appellant stated that he and Smith had been "down in the Main Street area of Los Angeles drinking and attempting to pick up some girls"; that on their way back to East Los Angeles, along Seventh Street, they stopped at about 2:30 o'clock a. m. and picked up a woman, later identified as Catherine J. Stevens; that when they stopped he asked where she was going and she stated she was going home, and she was then told in substance that if she would get into the car, they would take her home;

that she got into the rear seat of the automobile and they drove her to Montebello; that they parked the car and "he got in the rear seat with her and that he started . . . messing around." The officer asked what he meant by that phrase, and he stated that he was "trying to have an act of sexual intercourse with her, and that when he started this act and she was screaming and hollering that he had put his hand over her mouth to stop her from hollering and he had completed an act of sexual intercourse."

Appellant contends primarily that there was a failure to establish the corpus delicti by any evidence independent of the extrajudicial admissions of the appellant, and that the court erred in receiving extrajudicial statements of the appellant into evidence in the absence of a showing of the corpus delicti of the crime of rape. We are of the opinion that, under the facts of the instant case, there is no merit in the appellant's contentions.

The corpus delicti, or "the substantial and fundamental fact or facts necessary to the commission of a crime" may be shown by circumstantial evidence. (*People* v. *Guldbrandsen,* 35 Cal.2d 514 [218 P.2d 977].) The court said in *People* v. *Singh,* 93 Cal.App. 32, at page 35 [268 P. 958]: ". . . Obviously, the fact of penetration in a case of this character, as in that of rape, may be shown, as may any other ultimate fact, by circumstantial as well as by direct evidence. Indeed, it is undoubtedly true that in many of such cases as this, as well as of cases of rape, it is essential to prove the fact of penetration by means of circumstantial evidence."

Mrs. Stevens was a small woman, approximately 80 years of age, and was seen by the officers in the presence of two young men about 3:30 o'clock in the morning coming out of the Montebello hills. She was apparently not a willing passenger, in that shortly after the automobile was stopped she tried to push the front seat forward and endeavored to get out of the car. The young men were patently not telling the truth when the appellant stated that she was the grandmother of Smith, and neither of them could tell her true name. She was bruised about the face and arms, and had vaginal bleeding from which the skin and clothing were stained. This demonstrated that something had occurred. The bruises indicated force and the vaginal bleeding could have come from an act of sexual intercourse. The bleeding certainly indicated penetration in this particular case. In our opinion, the evidence here, coupled with other facts and the inferences to

be drawn therefrom, apart from the admissions of the appellant, point circumstantially to the fact that Mrs. Stevens had been raped.

■ It is, of course, not necessary, in establishing the elements of the crime, that the identity of the perpetrator be established. (*People* v. *Leary*, 28 Cal.2d 727 [172 P.2d 34]; *People* v. *Sparks*, 82 Cal.App.2d 145 [185 P.2d 652]; *People* v. *Mehaffey*, 32 Cal.2d 535 [197 P.2d 12]; *People* v. *Cullen*, 37 Cal.2d 614 [234 P.2d 1]; *People* v. *Amaya*, 40 Cal. 2d 70 [251 P.2d 324].)

Two of the members of this court as now constituted participated in a decision, *Smith* v. *Superior Court*, 140 Cal. App.2d 862 [295 P.2d 982] (a proceeding of appellant's codefendant, wherein he sought a writ of prohibition, following a denial of his motion under section 995 of the Penal Code), wherein we considered some of the very matters now before us. In that case we said, at page 864:

"From the disparity in the ages of the petitioner and the victim the trial court could draw the inference that the victim was not the wife of the defendant. The bruises upon her face, nose and arms, and the presence of blood upon the inner aspect of her thighs and upon her clothing was sufficient proof of the element of force and resistance.

"The evidence as to there having been an act of sexual intercourse with penetration is weak but, we believe, sufficient."

True it is that we had before us at the time of that decision the testimony of the victim, which was later, at the occasion of the trial, stricken. However, we are still of the opinion that the evidence, exclusive of what Mrs. Stevens said, supports the conclusion that there was an act of sexual intercourse. ■ The rule which must guide us, in this appeal, is stated in *People* v. *Daugherty*, 40 Cal.2d 876, at page 885 [256 P.2d 911], where it was said: "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt."

■ Although the appellant vehemently contended, at the time of the trial, that the elements of the corpus delicti of the crime in their entirety had to be established beyond a reasonable doubt, such is not the law in this state. Slight or prima facie evidence is sufficient. (*People* v. *Corrales*, 34 Cal.2d 426, 429 [210 P.2d 843]; *People* v. *Gouldy*, 69 Cal.App.2d 6, 10 [158 P.2d 59].)

It might be noted too, that the appellant did not, in any proceeding, testify in his own behalf. In *People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3], the court said:

"The failure of the accused to testify becomes significant because of the presence of evidence that he might 'explain or . . . deny by his testimony' (Cal. Const. art. I, § 13), for it may be inferred that if he had an explanation he would have given it, or that if the evidence were false he would have denied it. (*State* v. *Grebe, supra* [17 Kan. 458]; *Mooney* v. *Davis, supra,* 193 [75 Mich. 188 (42 N.W. 802, 13 Am. St.Rep. 425)]; see Code Civ. Proc., §§ 1963, subds. 5, 6; 2061, subds. 6, 7.) No such inference may be drawn, however, if it appears from the evidence that defendant has no knowledge of the facts with respect to which evidence has been admitted against him, for it is not within his 'power' (Code Civ. Proc., § 2061, subd. 6 to explain or deny such evidence."

And in *People* v. *Ashley,* 42 Cal.2d 246, at page 268 [267 P.2d 271], the court said: "A defendant's failure to take the stand 'to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3]. . . .) But the failure to testify will not supply a lacuna in the prosecution's proof. (*People* v. *Zoffel,* 35 Cal.App.2d 215, 221 [95 P.2d 160] . . .' *People* v. *Adamson,* 27 Cal.2d 478, 489-490 [165 P.2d 3] . . .; *People* v. *Sawaya,* 46 Cal.App.2d 466, 471 [115 P.2d 1001] . . .; *People* v. *Cox,* 102 Cal.App.2d 285, 287 [227 P.2d 290]. . . .)"

Appellant also insists that there was no showing by any direct evidence of the nonmarriage of Mrs. Stevens to him. It would have been better if the district attorney had straightforwardly established that there was no marriage between them, which unquestionably could have been done, and the problem would not now be before us. We believe, however, that the disparity in ages and the complete differences of their names was sufficient to establish, prima facie, that they were not married. (*Smith* v. *Superior Court, supra*; *People* v. *Allison,* 44 Cal.App. 118 [185 P. 992].)

The statements made by the appellant to the police establish that he was fully aware of what he was saying, and understood all of the terms used by him. The appellant points out that evidence should never be replaced by mere suspicion

and conjecture, and with that statement we agree, and in connection therewith there is not the slightest doubt in our minds that the appellant forcibly raped Catherine J. Stevens. At the time of the hearing of the appellant's application for probation and pronouncement of judgment, apparently counsel for the appellant himself abandoned any thought that he was not guilty, for, among other things he said:

". . . although the doctor's report was that there were some bruises about her face and her arms and I think that is explained by the defendant's statement in here that he held her mouth. I don't think there was any actual vicious bleeding in this case.

"I would point out to the Court that the defendant was drunk.

. . . . . . . . . . . .

". . . And I feel that this type of a case here is a very unfortunate one, and it has aggravated circumstances, but I don't feel the defendant would benefit by going up to the penitentiary with other people, hardened criminals. I think this is the type of case where we should consider the drinking, *the fact that he probably wouldn't have done it if he hadn't been drinking,* and I think that if he was given a chance to go on probation that he would rehabilitate himself.

"I would like to state further that from the very first with this boy, the very first note that he sent down to our office, and from the statements we have taken, *he has shown a tremendous amount of remorsefulness.* He has been remorseful about this thing all the way through. As he stated to me several times, and Mrs. Root, he could hardly look anyone in the eye. He said he just felt so bad and so ashamed about it. I think that with that attitude the Court might well consider probation." (Emphasis added.)

The trial judge quite correctly summed up the whole matter when he said:

"Well, that's a good attitude to have because the crime was an exceedingly vicious crime. It is difficult to imagine how it could possibly have occurred, how a person could be so animal-like and so vicious as to pick up a lady well over 80 years of age, obviously a very elderly, feeble person, under the guise of taking her home, and taking her up into the hills and getting in the back seat, and by his own admission when she is struggling with him put his hand over her mouth and stifle her cries and then proceed to rape her. To say that it has some vicious aspects, it is all vicious from the

very start, so it is about time that this young man had some remorse. This doesn't condemn him or say that it is a hopeless situation; remorse is a good sign, but it is a crime that society looks on as being exceedingly vicious and one for which comparable punishment must be administered.

"This boy has had a pretty rugged life. This isn't his first offense of a sexual nature."

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1957.