THE STATE, DEFENDANT IN ERROR, v. JAMES CALLAHAN, PLAINTIFF IN ERROR.

Submitted March 20, 1908—Decided June 8, 1908.

1. Where in a criminal case the state has shown facts from which, unexplained, a strong presumption arises that a disorderly house was kept by the defendant, it is not error for the trial court to charge that the jury may consider the fact of the non-production, as a witness, of a woman said to be his housekeeper, who had resided there for some time, and was present when the public authorities raided the house and found there three other women of doubtful character, no reason being offered for her absence.

2. The non-production of a witness who is presumptively able to explain the circumstances which constitute a *prima facie* case against a defendant, may be considered by the jury in weighing the effect of evidence applicable to the matter in dispute, but it does not raise any presumption of guilt or innocence.

On error to the Middlesex Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and MINTURN.

For the plaintiff in error, *Robert Adrain.*

For the defendant in error, *George Berdine.*

The opinion of the court was delivered by

BERGEN, J.   The plaintiff in error was convicted of keeping a disorderly house.   The case made by the state disclosed that defendant was the owner of the house in which the offence is charged to have been committed; that he resided there with a woman said to be his housekeeper; that other women of doubtful morals frequented the place, three being there when plaintiff in error was arrested; that a saloon was conducted in connection with the house, in which men were solicited by women, and that intoxicating liquors were sold in violation of the law, from which the jury might properly infer that a disorderly house was being kept.   The plaintiff in error did not offer himself as a witness, nor call as a witness his housekeeper, who was present when he was arrested, and had lived there long enough to know the character of the house and its inmates when the house was raided under the direction of the mayor of the city.   The court charged the jury, in substance, that where the evidence, if true, would be conclusive of the guilt of the accused, and he can disprove it by his own oath as a witness, then his silence would justify a strong inference that he could not deny the charge, and to this exception was taken and error assigned.   We think the charge correctly expressed the rule of law adopted in this state, and that it was applicable to the facts in this case, for there was evidence from which the jury might properly infer that accused was harboring immoral women, and that the place was a common bawdy house, to which men and women resorted for unlawful purposes, and that intoxicating liquor was being sold in violation of law.   The presence of the women, the selling of liquor unlawfully, the reason for the possession of gambling appliances, if not used or to be used unlawfully, could have been explained by the accused, and the inference of crime arising therefrom destroyed.   Such explanation would be more than a general denial of guilt, and the refusal to give an explanation consistent with innocence justified the inference that the accused could not make any explanation which would overthrow the presumptions of guilt

arising from the facts as proven by the state.  *Parker* v. *State,* 32 *Vroom* 308; *State* v. *Wines,* 36 *Id.* 32.

Error was also assigned on an exception taken to that part of the charge of the trial court appearing in the record as follows: "It was also proper at the time, as it is proper now, for the jury to consider why it was that the defence did not call upon the young man Ryan, who was found in the ice box, to explain what kind of a house he was in, and why he went into the ice box. It is also proper for the jury to consider why it was that no explanation was offered, and why Mabel Morrison, who had been the housekeeper and servant of the defendant for a period of four months prior to April 6th, 1907, and who had been found in his house on the 6th of April, was not here as a witness. It may easily be that the defendant was justified in law and morals in not calling them, but you may inquire why the explanation was not given."

From the testimony it appeared that Ryan was discovered secreted in an ice box by the officer searching the house.

On the question of non-production of witnesses the rule seems to be, according to the weight of authority, that the non-production of a witness, either by the state or the defendant, may be considered by the jury in weighing the effect of evidence applicable to the subject in dispute, but it will not justify an arbitrary presumption of suppression of evidence, nor does it raise any presumption of guilt or innocence. *Clark's Crim. Pro.* 548; *Whart. Ev.,* § 1267. The fact that a defendant refuses to call witnesses who have knowledge of the circumstances which constitute a *prima facie* case against him, may be considered by the jury in determining the effect to be given to the evidence submitted, but not as proof against him, for the material and necessary facts in support of the state's case must be proved. In the present controversy the state's case rested upon proof that women of doubtful morals were found in a house, where, on a previous occasion, another woman had solicited a visitor to go with her to another part of the house under conditions indicating a desire to gratify a lustful propensity; that men and women

frequented the place; that gambling machines were found there, and other circumstances proven which, unexplained, would justify an inference that a disorderly house was being kept.    If the persons who were inhabiting the house were not there for immoral purposes, and gambling was not being carried on, or liquor unlawfully sold, the housekeeper and Ryan could have so testified, and in the absence of any explanation or reason for their non-production, an inference would be justified that, if called, they could not contradict the facts from which the state claimed an inference of guilt arises.

The charge in the present case was confined to an instruction that the jury might consider the circumstances that witnesses living with defendant, who presumptively had knowledge of the character of the house and its frequenters, were not called as witnesses to explain facts, which, unexplained, raised a strong presumption of guilt, and we do not find that the proper rule in such cases was transgressed.

Error is also assigned because the court permitted the state to open its case after both sides had rested.    This was within the discretionary power of the court, and we do not think it was abused.

We have carefully considered the other assignments and causes, but find nothing in them which requires a reversal of the judgment.    Some of the alleged errors relate to matters brought out by the defendant on cross-examination of the witnesses for the state, and were not injurious to the defendant; others were based on exceptions to questions that were not answered, and the rest are not supported by any accepted rule of law.

The judgment will be affirmed.