[Crim. No. 477. Fourth Dist. Mar. 21, 1944.]

THE PEOPLE, Respondent,. v. RAYMOND JACQUAINO, Appellant.

Edward L. Davin for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged in three separate counts with violations of subdivision 3 of section 337a of the Penal Code which, so far as material here, makes it a crime to receive, hold or forward any money bet or to be bet upon the result or purported result of a horse race. A jury found him guilty and the court sentenced him to thirty days in the county jail on each count, with sentences to run consecutively. He has appealed from the judgment and from an order denying his motion for a new trial.

The main contention is that the evidence is not sufficient to sustain the verdict and judgment. The three counts on which he was convicted relate to three bets allegedly placed with the defendant by a police officer of the city of San Diego on December 26, 1942, January 4, 1943 and January 8, 1943, respectively.

With respect to these three transactions this officer testified as follows: On December 26, 1942, he entered the Ritz Cafe which was run by a man named Dobie. He approached the defendant and told him that he had been told he could find him there, and that he would like to make a bet on a

horse that day. The defendant replied: "Well, I don't believe I know you. Do you have any sort of identification?" The officer showed the defendant a pass to the destroyer base, where he had formerly been employed, which contained his picture. The defendant looked at the pass and told the officer to wait a minute. He walked outside and returned in a few minutes saying "I guess its O.K." The defendant then asked the officer what horse he would like to bet on and the officer replied that he wanted to bet on "Workshop" for the eighth race at Fairgrounds Park and that he would like to play that race $2 to win. The defendant asked the officer for his initials and was told that they were "M. C." The officer then gave the defendant two one-dollar bills which the defendant put in his pocket. When the defendant took the money he wrote something on a small scratch pad which the officer was not able to see. While this transaction was in progress there was a Metropolitan Scratch Sheet lying on the bar and the officer had a similar scratch sheet in his hand and the defendant made a comparison between the two sheets.

On January 4, 1943, this officer visited another place called "Cecil's Grill" and found the defendant seated at the bar. He then told the defendant that he would like to bet on another horse that day and the defendant asked "What is it?", to which the officer replied: "'Quakertown' in the sixth race at Tropic Park." The defendant inquired how he wanted to play the horse and the officer replied that he wanted to play the horse to win. He gave the defendant his initials and handed him a one-dollar bill. The defendant replied: "Well, I will protect that" and placed the dollar bill in his pocket.

On January 8, 1943, this officer again entered the Ritz Cafe and had a conversation with the defendant. After the officer had looked at a scratch sheet for four or five minutes the defendant asked him what bet he would like to make that day. The officer told him it was on the horse "'Catapault' in the first race at the Fairgrounds Park, one dollar to win under my initials." The defendant relayed this bet by word of mouth to Mr. Dobie and then said: "We are going to hold this bet, the odds are pretty big which you know are not so favorable and, we won't have to telephone this one. We can hold that ourselves." While the defendant relayed

this bet to Mr. Dobie he put the dollar which had been given him by the officer in his pocket.

While the defendant denied most of the officer's testimony he admitted that the officer had shown him the pass to the destroyer base and testified that he had met the officer only on January 4, 1943. He said this was in the Ritz Cafe. A part of his testimony is rather significant. When asked if he had accepted any bet from this officer at the Ritz Cafe on January 4, he replied: "Not that I recall."

While the appellant concedes that it is not necessary in such a case to establish the fact that races upon which bets were being taken were actually being run (*People* v. *Sutherland*, 59 Cal.App. 462 [210 P. 965]), he argues that there must be some evidence that a bet was actually made upon a race or purported race; that the words "Metropolitan Scratch Sheet" and "National Scratch Sheet" are not words of common knowledge and some evidence of their meaning is required; that it cannot be told that the words "Quakertown," "Catapault" and "Workshop" relate to a horse or that "Fairgrounds Park" and "Tropic Park" relate, as a matter of common knowledge, to places where such contests as horse races take place; and that in the absence of evidence as to what these words really mean and in the absence of the introduction into evidence of one of the scratch sheets referred to, with an explanation of the meaning of the symbols thereon, there was no evidence which would justify the inference that the money received by the appellant on these three occasions was bet or wagered upon a horse race.

The appellant cites *People* v. *Bateman*, 57 Cal.App.2d 585 [135 P.2d 192]; *People* v. *Rabalete*, 28 Cal.App.2d 480 [82 P.2d 707]; *People* v. *Banks*, 39 Cal.App.2d 164 [102 P.2d 818], and similar cases, and argues that in all of these cases either the judgment of conviction was reversed or, when it was affirmed, there was testimony of expert witnesses as to the meaning of the numbers, letters and symbols appearing on scratch sheets which had been admitted in evidence.

It would serve no useful purpose to review these cases here. As was said in *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]: "the decision whether there is sufficient evidence to support the judgment of conviction must depend upon the circumstances of each case." The overhearing of a scrap of conversation like "242 to show" may not be sufficient to

justify an inference of all the facts necessary to a conviction, as was held in *People* v. *Rabalete, supra,* where the court said that it could not rely on a mere suspicion that perhaps one of the men had said "I would like to place a bet on 242 to show." And doubtless there are cases where scratch sheets are introduced in evidence and where the circumstances are such as to call for an explanation of the symbols found thereon. ▮ But, in this case, the material evidence was furnished by the man who placed the bet on each occasion. The testimony of what was said by this person and by the appellant, in each instance, shows that a bet was made, that the money was paid to and received by the appellant, and that the bet was placed on a horse. In each instance, the bet was on a named horse "to win." A horse could not win if there was no race or contest. Reference was also made to Fairgrounds Park and Tropic Park, and that horse races are sometimes held at such places is not altogether foreign to common knowledge or experience. The testimony as to what was said and done in connection with these three transactions, with the reasonable inferences therefrom, is sufficient to support a finding that all of the material elements of the crime charged were present, and the evidence supports the judgment. (*People* v. *Newland, supra; People* v. *Cacioppo,* 34 Cal.App.2d 108 [93 P.2d 194]; *People* v. *Taylor,* 40 Cal. App.2d 324 [104 P.2d 846]; *People* v. *Harris,* 40 Cal.App.2d 129 [104 P.2d 529].)

▮ The only other point raised is that the court erred in denying a motion to strike a statement made by the police officer while on the stand to the effect that on one of the occasions in question he saw the appellant "accept a dollar bet from another man who was seated next to him." It is argued that this was prejudicial in that, being proof that he had thus taken a bet, it created an inference that he had done the same thing on the occasions here in question. If we assume that this ruling was erroneous no prejudice appears since this same witness directly testified that on three separate occasions he had made such a bet with the appellant.

The judgment and order are affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 20, 1944.