[Crim. No. 4622. In Bank. Jan. 4, 1946.]

THE PEOPLE, Respondent, v. ADMIRAL DEWEY ADAMSON, Appellant.

Morris Lavine and Milton B. Safier for Appellant.

Robert W. Kenny, Attorney General, Walter L. Bowers, Assistant Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant was charged with murder in count I of an information by the district attorney of Los Angeles County, and in counts II, III, IV and V, with four separate crimes of burglary. He pleaded not guilty and was tried before a jury on counts I and II. He was tried in a separate consolidated case on counts III, IV and V. He admitted two prior felony convictions and was adjudged an habitual criminal. The defendant did not testify and produced no witnesses. He was found guilty on count I of murder in the first degree, without recommendation, and guilty on count II of burglary in the first degree. This appeal is automatic from the judgment on count I (Pen. Code, § 1239).

Defendant also appeals from the judgment on the burglary count and from an order denying his motion for new trial.

The body of Stella Blauvelt, a widow 64 years of age, was found on the floor of her Los Angeles apartment on July 25, 1944. The evidence indicated that she died on the afternoon of the preceding day. The body was found with the face upward covered with two bloodstained pillows. A lamp cord was wrapped tightly around the neck three times and tied in a knot. The medical testimony was that death was caused by strangulation. Bruises on the face and hands indicated that the deceased had been severely beaten before her death.

The defendant does not contend that the evidence does not justify a finding that murder in the first degree had been committed. (Pen. Code, § 189.) The sole contention of fact that he makes is that the evidence is not sufficient to identify him as the perpetrator. The strongest circumstance tending to so identify the defendant was the finding of six fingerprints, each identified by expert testimony as that of the defendant, spread over the surface of the inner door to the garbage compartment of the kitchen of the deceased's apartment. (See 2 Wigmore, Evidence, 3d ed., 389.) After the murder, this door was found unhinged, leaning against the kitchen sink. Counsel for defendant questioned witnesses as to the possibility of defendant's fingerprints being forged, but the record does not indicate that any evidence to that effect was uncovered. The theory of the prosecution was that the murderer gained his entrance through the garbage compartment, found the inner door thereof latched from the kitchen side, and forced the door from its hinges. It was established that defendant could have entered through the garbage compartment by having a man about his size do so. The fact that the key to the apartment could not be found after search and the testimony of a neighboring tenant as to sounds heard indicate that the murderer left the apartment through the door thereof and made his exit from the building down a rear stairway.

The tops of three women's stockings identified as having been taken from defendant's room were admitted in evidence. One of the stocking tops was found on a dresser, the other two in a drawer of the dresser among other articles of apparel. The stocking parts were not all of the same color. At the end of each part, away from what was formerly the top of the stocking, a knot or knots were tied. When the body of the

deceased was found, it did not have on any shoes or stockings. There was evidence that on the day of the murder deceased had been wearing stockings. The lower part of a silk stocking with the top part torn off was found lying on the floor under the body. No part of the other stocking was found. There were other stockings in the apartment, some hanging in the kitchen and some in drawers in a dressing alcove, but no other parts of stockings were found. None of the stocking tops from defendant's room matched with the bottom part of the stocking found under the body.

In reply to questions by the police, defendant denied that he resided or had ever been at the apartment house identified by testimony as his residence. At different times he gave two other addresses as his residence. When shown a picture of the murdered victim, he refused to look at it, stating that he did not like to look at dead people.

The theory of the prosecution was that the motive of the murder was burglary. Testimony revealed that the deceased was in the habit of wearing rings with large-sized diamonds and that she was wearing them on the day of the murder. The rings were not on the body and search has failed to uncover them. A witness, positively identifying the defendant, testified that at some time between the 10th and 14th of August, 1944, she overheard defendant ask an unidentified person whether he was interested in buying a diamond ring.

From the foregoing evidence a reasonable jury could conclude that beyond a reasonable doubt defendant committed the murder and burglary. (See *People* v. *Ramirez*, 113 Cal. App. 204 [298 P. 60]; 2 Wigmore, *supra*, 389.) Testimony that the screws were still in the hinges of the door when it was found and that fragments of wood that appeared to have come from the screw holes were clinging to them, indicating a forced removal, served to discount the possibilities that at some previous date the door had been taken from the apartment for some unknown reason and at that time handled by the defendant, or that defendant had handled the door during some earlier visit to the deceased's apartment. Testimony to the effect that the garbage pail was not in its customary place when found after the murder further tended to substantiate the prosecution's theory as to time and mode of entrance.

 Defendant contends that error was committed in the admission of the testimony of part of a conversation in which

he asked an unidentified person whether the latter was interested in purchasing a diamond ring. Conceding that this evidence, though hearsay, was admissible insofar as the hearsay rule is concerned as an admission (*People* v. *Ferdinand,* 194 Cal. 555, 568 [229 P. 341]; *People* v. *Britton,* 6 Cal.2d 10, 13 [56 P.2d 491]; *People* v. *Chan Chaun,* 41 Cal.App.2d 586, 593 [107 P.2d 455]), defendant contends that it was irrelevant. The rule is well settled that a witness may testify to part of a conversation if that is all that he heard and it appears to be intelligible. (*People* v. *Luis,* 158 Cal. 185, 194 [110 P. 580]; *People* v. *Ramos,* 3 Cal.2d 269, 272 [44 P.2d 301]; *People* v. *Tarbox,* 115 Cal. 57, 64 [46 P. 896]; *People* v. *Daniels,* 105 Cal. 262, 285 [38 P. 720]; *People* v. *Montgomery,* 47 Cal.App.2d 1, 19 [117 P.2d 437].) *People* v. *Rabalete,* 28 Cal.App.2d 480, 485 [82 P.2d 707], is not contrary to this rule. The fragment of the sentence there held inadmissible, ''242 to show,'' was held to create merely a suspicion of the meaning of the entire sentence. (*People* v. *Jacquaino,* 63 Cal.App.2d 390, 393-4 [146 P.2d 697].) The part of the conversation here admitted, however, in view of the evidence indicating that the motive of the murderer was the theft of diamonds, tended to identify defendant as the perpetrator.

■ To be admissible, evidence must tend to prove a material issue in the light of human experience. (See 1 Wigmore, *supra,* 407.) ■ The stocking tops found in defendant's room were relevant to identify defendant because their presence on his dresser and in a drawer thereof among other articles of wearing apparel with a knot or knots tied in the end away from what was formerly the top of the stocking indicates that defendant had some use for women's stocking tops. This interest in women's stocking tops is a circumstance that tends to identify defendant as the person who removed the stockings from the victim and took away the top of one and the whole of the other. Although the presence of the stocking tops in defendant's room was not by itself sufficient to identify defendant as the criminal, it constituted a logical link in the chain of evidence. (*People* v. *Graves,* 137 Cal.App. 1 [29 P.2d 807, 30 P.2d 508]; *People* v. *Billings,* 34 Cal.App. 549, 553 [168 P. 396].) ■ Evidence that tends to throw light on a fact in dispute may be admitted. The weight to be given such evidence will be determined by the jury. (*People* v. *Mooney,* 177 Cal. 642, 655 [171 P. 690];

486

*People* v. *Graves, supra; People* v. *Billings, supra;* see 7 Mc-Kinney's Dig. 54.) Codification of this rule as applied to demonstrative evidence is found in section 1954 of the Code of Civil Procedure: "Whenever an object, cognizable by the senses, has such a relation to the fact in dispute as to afford reasonable grounds of belief respecting it, or to make an item in the sum of the evidence, such object may be exhibited to the jury. . . . The admission of such evidence must be regulated by the sound discretion of the court."

■ It is contended that the admission of the stocking tops deprived defendant of a fair trial and therefore denied him due process of law. Defendant states that their admission could serve no purpose except to create prejudice against him as a Negro by the implication of a fetish or sexual degeneracy. No implication of either was made by the prosecutor in his brief treatment of the evidence in oral argument. ■ Moreover, except in rare cases of abuse, demonstrative evidence that tends to prove a material issue or clarify the circumstances of the crime is admissible despite its prejudicial tendency. (*People* v. *Antony,* 146 Cal. 124 [79 P. 858] ; *People* v. *Hawes,* 98 Cal. 648 [33 P. 791]; *People* v. *Haydon,* 18 Cal.App. 543 [123 P. 1102, 1114] ; see *People* v. *Colvin,* 118 Cal. 349, 351 [50 P. 539] ; see *People* v. *Bolton,* 215 Cal. 12, 20 [8 P.2d 116] ; 8 Cal.Jur. 140 et seq.; *ibid.* 76, § 177; 4 Wigmore, *supra,* 251, 254; 21 Mich.L.Rev. 935; 31 Yale L.J. 107.)

■ The prosecuting attorney commented repeatedly on the failure of the defendant to take the stand. By statute or by decision, the majority of jurisdictions prohibit such comment. (See 8 Wigmore, *supra,* 412; 31 Mich.L.Rev. 40.) In 1934, however, following studies made by the American Law Institute and the American Bar Association (9 Proc.Am.L.Inst. 202-218; 56 Reports A.B.A. 137-152), article I, section 13 of the California Constitution was amended to provide that ". . . in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury. . . ." Similar provisions are found in section 1323 of the Penal Code. Article I, section 13 of the California Constitution also provides that "No person shall be . . . compelled in any criminal case, to be a witness against himself. . . ." It is contended that this provision and the 1934 amendment are inconsistent and that therefore both cannot be

effective. Before the 1934 amendment, it was the rule in California that commenting on the defendant's failure to take the stand or advising the jury that it could draw inferences unfavorable to him on that account violated the privilege against self-incrimination. (*People* v. *Tyler*, 36 Cal. 522.) The 1934 amendment limited but did not abolish this privilege. A person still cannot be compelled in any criminal case "to be a witness against himself," but the privilege no longer extends so far as to prevent comment upon or consideration of his failure to explain or deny evidence against him. The practical effect of the 1934 amendment may be that many defendants who otherwise would not take the stand will feel compelled to do so to avoid the adverse effects of the comments and consideration authorized by the amendment. (See 26 Yale L.J. 464, 466.) Such a coercive effect, however, is sanctioned by the amendment, which, being later in time, controls provisions adopted earlier.

It is contended that insofar as it limits the privilege against self-incrimination, the 1934 amendment to the Constitution and section 1323 of the Penal Code violate the due process clause of the Fourteenth Amendment to the United States Constitution. Although there has been much discussion as to the wisdom of allowing comment upon and consideration of a defendant's failure to deny or explain incriminating evidence (see 8 Wigmore, *supra*, 419; 31 Mich.L.Rev. 40; *ibid.* 226; 22 Cornell L.Q. 392; 26 Yale L.J. 464; 9 Proc. Am.L.Inst. 202-218; 56 Reports of A.B.A. 137-152; 3 Jour. of Crim. Law and Criminology, 770; 13 *ibid.* 292; 26 *ibid.* 180), the freedom from federal constitutional limitations of state provisions allowing such comment and consideration was settled in *Twining* v. *New Jersey*, 211 U.S. 78 [29 S.Ct. 14, 53 L.Ed. 97]. (See 31 Mich.L.Rev. 40, 45; *ibid.* at 228; 22 Cornell L.Q. 392, 393; 8 Wigmore, *supra*, 414, § 2272, n. 2.) In that case the defendant, who was convicted in the courts of New Jersey, had not testified in his own behalf. The trial court, in accordance with New Jersey decisions, commented on this fact. The court decided that such comment did not constitute a denial of due process, holding that the due process clause does not protect a person against self-incrimination. The fact that the comment in the Twining case was by the court rather than the prosecutor is immaterial. (*State* v. *Ferguson*, 226 Iowa 361 [283 N.W. 917]; see 8 Wigmore, *supra*, 1943 Supp., 30.) *Twining* v. *New Jersey* also held that

the privilege against self-incrimination is not protected by the privileges and immunities clause of the Fourteenth Amendment.

It is clear from the terms of the constitutional provision that the consideration and comment authorized relates, not to the defendant's failure to take the stand, but to ''his failure to explain or deny by his testimony any evidence or facts in the case against him'' whether he testifies or not. The constitutional provision thus makes applicable to criminal cases in which the defendant does not testify, the established rule that the failure to produce evidence that is within the power of a party to produce does not affect in some indefinite manner the ultimate issues raised by the pleadings, but relates specifically to the unproduced evidence in question by indicating that this evidence would be adverse. (*State* v. *Callahan,* 76 N.J.L. 426 [69 A. 957] ; *State* v. *Sgro,* 108 N.J.L. 528 [158 A. 491] ; *McDonald* v. *Smith,* 139 Mich. 211, 224 [102 N.W. 668] ; *Mooney* v. *Davis,* 75 Mich. 188, 193 [42 N.W. 802, 13 Am.St.Rep. 425] ; *Harrison* v. *Harrison,* 124 Iowa 525, 526 [100 N.W. 344] ; see Cal. Code Civ. Proc. §§ 1963 (5), 2061 (6), (7) ; 2 Wigmore, *supra,* 162; *ibid.* 176; *ibid.* 179.) ''All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to contradict.'' (Mansfield, C. J. in *Blatch* v. *Archer,* 1 Cowp. 63, 65 ; see 2 Wigmore, *supra,* 162 et seq., and cases there cited.) The Code of Civil Procedure codifies this rule by providing that the jury is to be instructed by the court on all proper occasions: ''6. That evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict''; (Code Civ. Proc., § 2061(6)), and that it is to be presumed ''That evidence wilfully suppressed would be adverse if produced'' (*Ibid.* § 1963(5)). The basis in common experience for this rule as applied to criminal cases has been set forth in *State* v. *Grebe,* 17 Kan. 458: ''The instinct of self-preservation impels one in peril of the penitentiary to produce whatever testimony he may have to deliver him from such peril. Every man will do what he can to shield himself from the disgrace of a conviction of crime, and the burden of punishment. We all know this. We all expect it. Whenever therefore a fact is shown which tends to prove crime upon a defendant, and any explanation of such fact is in the nature of the case peculiarly within his knowledge and reach,

a failure to offer an explanation must tend to create a belief that none exists.'' Therefore the failure of the defendant to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable. Respondent cites *People* v. *Dukes,* 16 Cal.App.2d 105, 109-110 [60 P.2d 197] ; *People* v. *Pianezzi,* 42 Cal.App.2d 265, 267-269 [108 P.2d 732] and *People* v. *Dozier,* 35 Cal.App.2d 49, 59-60 [94 P.2d 598], as holding that failure to testify directly affects the ultimate issue of guilt by raising an ''inference or presumption of guilt.'' The instruction refused in the Dukes case was in part to the effect that the members of the jury were ''not to consider or permit [themselves] in anywise to be influenced by the fact that the defendant had not seen fit to offer himself as a witness before you.'' A similar instruction was refused in the Pianezzi case. The instruction refused in the Dozier case provided that failure to deny or explain testimony ''should not create a prejudice or unfavorable inference in the minds of the jury ; no inference can be drawn against the defendant from his failure to testify.'' In these cases the court was clearly correct in holding that the instruction would destroy the effect of the 1934 amendment.

The failure of the accused to testify becomes significant because of the presence of evidence that he might ''explain or . . . deny by his testimony'' (art. I, § 13, Cal. Const.), for it may be inferred that if he had an explanation he would have given it, or that if the evidence were false he would have denied it. (*State* v. *Grebe, supra; Mooney* v. *Davis, supra,* 193; see Code Civ. Proc., §§ 1963(5), (6), 2061(6), (7).) No such inference may be drawn, however, if it appears from the evidence that defendant has no knowledge of the facts with respect to which evidence has been admitted against him, for it is not within his ''power'' (Code Civ. Proc., § 2061(6)) to explain or deny such evidence. (*Ibid.* § 1963(5) ; *Parker* v. *State,* 61 N.J.L. 308 [39 A. 651] ; *Caminetti* v. *United States,* 242 U.S. 470, 494, 495 [37 S.Ct. 192, 61 L.Ed. 442] ; *Blatch* v. *Archer, supra; R.* v. *Burdett,* 4 B. & Ald. 122; see *People* v. *Albertson,* 23 Cal.2d 550, 585 [145 P.2d 7].)

It was never intended, of course, that the 1934 constitutional amendment should relieve the prosecution of the

burden of establishing guilt beyond a reasonable doubt by admissible evidence supporting each element of the crime. (*People* v. *Sawaya*, 46 Cal.App.2d 466, 471 [115 P.2d 1001]; *State* v. *Callahan, supra;* see Bruce, (One of the draftsmen of the American Bar Association resolution that preceded the adoption of the California provisions), *The Right to Comment on the Failure of the Defendant to Testify*, 31 Mich.L.Rev. 226, 229, 231; 2 Wigmore, *supra,* 179; 4 Cleveland Bar Journal 12; 3 Jour. of Crim. Law and Criminology 770, 774.)

Nor can the defendant's silence be regarded as a confession. Insofar as *People* v. *Pianezzi*, 42 Cal.App.2d 265, 268 [108 P.2d 732], holds that the prosecutor may properly characterize the defendant's failure to testify as tantamount to a confession, it is disapproved.

Of its own volition the trial court gave the following as the only instruction with respect to the right of the prosecution to comment on and of the jury to consider defendant's failure to explain or deny the evidence against him: "It is the right of court and counsel to comment on the failure of defendant to explain or deny any evidence against him . . .; yet the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of witnesses." In stating merely that court and counsel may comment on defendant's failure to explain or deny incriminating evidence, the instruction encompasses a rule of concern solely to the court. Respondent cites *People* v. *McKenna*, 11 Cal.2d 327, 336 [79 P.2d 1065], and *People* v. *Boggs*, 12 Cal.2d 27, 35 [82 P.2d 368], as upholding the instruction given. In the McKenna case, no comment was made on the failure of the defendant to testify, and it was held that an instruction in the general language of the Constitution was not prejudicial. The Boggs case likewise rested merely on the ground that the instruction there given was not prejudicial. The jury, however, is concerned with the scope and nature of the consideration that it may give defendant's failure to explain or deny incriminating evidence, and in the present case should have been instructed that the defendant's failure to deny or explain evidence presented against him does not create a presumption or warrant an inference of guilt, but should be considered only in relation to evidence that he fails to explain or deny; and that if it appears from the evidence that defendant could reasonably be expected to explain or deny evidence presented against him, the jury may consider his failure to do so as tend-

ing to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.

The failure to give such an instruction was not prejudicial, however. It appears from the evidence that defendant could reasonably be expected to explain or deny all evidence presented. Thus the jury could infer from the evidence concerning the fingerprints either that defendant handled the garbage compartment door in the perpetration of the burglary and murder or that they were placed there at some other time. The defendant could reasonably be expected to know whether or not he had handled the garbage door and if so, on what occasion. The evidence that he solicited someone to buy a diamond ring is susceptible of an inference either that he was attempting to sell the victim's rings or rings that had no connection with the crime. The defendant could reasonably be expected to know whether or not he had done such soliciting and, if so, with regard to what rings. His failure to explain or deny this evidence by his testimony could have been considered by the jury as indicating that the evidence was true and that the inferences unfavorable to the defendant were the more probable.

The defendant contends that the court erred in refusing the following proposed instructions: "You are instructed that it is the policy of the law to zealously protect the innocent. In a criminal case the law clothes the defendant with a presumption of innocence and casts upon the People the burden of proving guilt beyond a reasonable doubt. The defendant is not obliged to prove his innocence or offer any proof thereon, and if the defendant elects not to take the witness stand but to rest upon what he believes to be the weakness or insufficiency of the People's case, he has a right to so do and no inference or presumption of guilt arises from his failure to take the witness stand." "You are instructed that the burden of proof rests on the prosecution and the failure of the defendant to take the stand raises no presumption or inference of guilt." There was no error in the refusal to give these instructions. The court gave ample general instructions elsewhere on the presumption of innocence and burden of proof. The bare statement, moreover, that "the failure of the defendant to take the stand raises no presumption or inference

of guilt,'' is deficient and misleading in that it fails to point out what consideration can be given the circumstance. The court may properly refuse to give a proposed instruction that is misleading because it only partially states the law.

■ The following proposed instruction, however, should have been given: ''You are instructed that the fact that the prosecutor has a right to comment on the failure of the defendant to take the stand does not relieve the prosecution of the burden of establishing guilt beyond a reasonable doubt and by competent and legal evidence.'' Although a general instruction on burden of proof had been given, because of the likelihood of misconstruction of the weight and effect to be given the circumstance, the defendant was entitled to a specific instruction that failure to deny or explain incriminating evidence does not impose upon him the burden of persuading the jury of his innocence. In view, however, of the fact that the jury was instructed thoroughly on burden of proof generally, it is improbable that the verdict would have been different had the instruction been given.

■ The following instruction was also proposed: ''You are instructed that the right of the prosecution to comment on the failure of the defendant to take the stand cannot be used to supply a failure of proof by the prosecution.'' Since the circumstance of the defendant's failure to testify serves only to assist the jury in determining the credibility of and the inference to be drawn from evidence that is capable of being but is not explained or denied by his testimony, where no such evidence is presented in support of an essential element of the crime, this circumstance clearly cannot alone support a finding on that element against the defendant. (*People* v. *Sawaya, supra; State* v. *Callahan, supra;* see 2 Wigmore, *supra,* 179; 26 Yale L.J. 464, 469; 31 Mich.L.Rev. 226, 229, 231; 4 Cleveland Bar Journal 12; 3 Jour. of Crim. Law and Criminology, *supra.*) Defendant was therefore entitled to an instruction that his failure to testify may not by itself support a finding against him on an essential element of the crime. ■ The refusal to give the proposed instruction, however, was not prejudicial. Ample evidence supporting each element of the crime was presented. Moreover, the strength of the evidence against the defendant makes it improbable that the jury could have disbelieved all the positive evidence supporting any essential element of the crimes

charged, thereby leaving defendant's failure to testify the sole circumstance in support of that element.

 Defendant contends that the rational connection between a fact proved and the fact presumed required by the due process clause of the Fourteenth Amendment (*People* v. *Scott,* 24 Cal.2d 774, 779 [151 P.2d 517] and cases there cited; *Tot* v. *United States,* 319 U.S. 463, 467 [63 S.Ct. 1241, 87 L. Ed. 1519]) does not exist between the failure to deny or explain incriminating evidence and the inference of the credibility and unfavorable tenor thereof that these provisions permit the jury to draw. Defendant argues that reasons other than lack of power to explain favorably to himself or to deny such evidence, for example fear of disclosure to the jury of prior crimes through impeachment (Code Civ. Proc., § 2051; see 3 Wigmore, *supra,* 538; *ibid.* 380) or fear of creating a bad impression by being a "poor witness," may prompt a defendant not to take the stand. In view of the even poorer impression normally created by not taking the stand (*State* v. *Grebe, supra;* see Bruce, *supra,* 31 Mich.L.Rev. 226, 229, 231; 8 Wigmore, *supra,* 410; *ibid.* 424; 3 Jour. of Crim. Law and Criminology, *supra*), fear of creating a bad impression because of being a "poor witness" is not an impressive explanation of a defendant's silence. (See 22 Cornell L.Q. 392, 395 et seq.; 13 Jour. of Crim. Law and Criminology, 292, 293.) It is true that defendants convicted of prior crimes often do not take the stand because of fear that upon cross-examination their criminal record will be given to the jury. (See Code Civ. Proc., § 2051; 22 Cornell L.Q., *supra;* 9 Proc.Am.L.Inst. 202, 204, 207; 56 Reports of A.B.A. 137, 142, 144; 13 Jour. of Crim. Law and Criminology, 292, 295.) Clearly, however, the inference authorized need not be the only plausible one that can be drawn from the proved fact, to be rational under the due process clause. The inference is rational if the proved fact is a warning signal according to the teachings of experience. (*People* v. *Scott,* 24 Cal.2d 774, 780 [151 P.2d 517]; *Morrison* v. *California,* 291 U.S. 82, 90 [54 S.Ct. 281, 78 L.Ed. 664].) It is common experience that the failure to explain or deny adverse evidence that a defendant may reasonably be expected to explain or deny tends to show the credibility of such evidence and renders more probable the unfavorable tenor thereof. (Code Civ. Proc., §§ 1963(5), 2061(6); *State* v. *Grebe, supra;* see 2 Wigmore, *supra,* 164 et seq.; 31 Mich.L.Rev. 226, 229.)

There has been much criticism of the present state of the law, which places a defendant who has been convicted of prior crimes in the dilemma of having to choose between not taking the stand to explain or deny the evidence against him thereby risking unfavorable inferences, and taking the stand and having his prior crimes disclosed to the jury on cross-examination. (See 22 Cornell L.Q. 392, 395; 31 Mich.L.Rev. 40; 9 Proc.Am.L.Inst., *supra;* 56 Reports of A.B.A., *supra.*) In the present case defendant admitted two prior felony convictions for which he served terms of imprisonment in the Missouri state prison. The fact of the commission of these crimes was not offered or introduced into evidence and would have been inadmissible under the general rule with respect to prior crimes. (*People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7], and authorities there cited.) Had defendant taken the stand, however, the commission of these crimes could have been revealed to the jury on cross-examination to impeach his testimony. (Code Civ. Proc., § 2051; *People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402]; see 28 Cal.L.Rev. 222; 3 Wigmore, *supra,* 380.) Since fear of this result is a plausible explanation of his failure to take the stand to deny or explain evidence against him (see 22 Cornell L.Q. 392; 13 Jour. of Crim. Law and Criminology, 292, 295; 9 Proc.Am.L. Inst., *supra;* 56 Reports of A.B.A. *supra*), the inference of the credibility and unfavorable tenor of such evidence that arises from this failure is definitely weakened by this rule of impeachment. This weakness, however, could not be revealed to the jury by counsel or court without prejudicing the defendant through the revelation of past crimes. Court and prosecutor are left no alternative but to comment on defendant's failure to deny or explain evidence against him as though the sole reason for his silence was that he had no favorable explanation. Any change in the law in this respect, however, must be made by the Legislature.

The prosecutor commented seven times in oral argument on defendant's silence. Defendant did not object below to these comments. In the absence of such objection it is the general rule that misconduct of the district attorney cannot be urged on appeal. (*People* v. *King,* 13 Cal.2d 521, 527 [90 P.2d 291]; *People* v. *Boggs,* 12 Cal.2d 27, 40 [82 P.2d 368]; *People* v. *Hight,* 37 Cal.App.2d 498, 501 [99 P.2d 657].)

Moreover, in the majority of instances these comments were properly limited to specific parts of the evidence that de-

fendant could reasonably be expected to explain or deny. The prosecutor approached the borderline of permissible comment, however, when he closed his oral argument as follows: "In conclusion, I am going to just make this one statement to you: Counsel asked you to find this defendant not guilty. But does the defendant get on the stand and say, under oath, 'I am not guilty?' Not one word from him, and not one word from a single witness. I leave the case in your hands." This statement could be construed as a declaration that the jury should infer guilt solely from defendant's silence, and if defendant had objected thereto, he would have been entitled to have the jury advised that his silence could not be given such construction. It is improbable, however, that the jury was misled. The prosecutor's statement followed his review of the evidence and could be construed in connection therewith as a conclusion that although the evidence established guilt, the defendant failed to explain or deny it. A major part of the testimony and of the prosecutor's oral argument concerned the presence of six of defendant's fingerprints on the garbage compartment door. Fingerprints are the strongest evidence of identity of a person and under the circumstances of the present case they were alone sufficient to identify the defendant as the criminal. (*People* v. *Ramirez,* 113 Cal.App. 204 [298 P. 60].)

The judgments and the order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied January 31, 1946.