[Crim. No. 4. Fifth Dist. May 16, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. NATHANIEL
RICHARD JOHNSON, Defendant and Appellant.

Nathaniel Richard Johnson, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat A. Agliano, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Nathaniel Richard Johnson, was charged with the crime of burglary; the information alleged that on or about February 11, 1961, he wilfully and unlawfully entered Fox's Drug Store in Selma, California, with the intent to commit theft therein. The information also charged five prior convictions: (1) possession of burglary tools on June 20, 1946, in the State of Arkansas, for which he served a term in the Arkansas State Prison; (2) attempted burglary on October 24, 1949, in the State of Kansas, for which he served a term in the Kansas State Penitentiary; (3) possession of explosives on October 24, 1949, in the State of Kansas, for which he served a term in the Kansas State Penitentiary; (4) burglary on June 28, 1954, in the State of Oregon, for which he served a term in the Oregon State Penitentiary; (5) burglary not in a dwelling on October 21, 1957, in the State of Oregon, for which he served a term in the Oregon State Penitentiary. The defendant entered a plea of not guilty to the crime charged, but admitted the five prior convictions. He was tried before a jury and found guilty of burglary in the second degree. The court sentenced him to the California State Prison for the term prescribed by law, and he appeals.

At 11:32 p. m. on February 11, 1961, a burglar alarm sounded in the Selma police headquarters; it was activated from Fox's Drug Store. Officers Slavens and Bilyeu immediately went to the store front and, finding the door locked, telephoned to one of the owners, Mr. Clyde Fox, requesting that he bring his keys. While waiting for the owner to arrive, Officer Bilyeu, through the glass front of the store, observed two men crawling on the floor at the rear of the store toward the stock room. One of the men wore a peculiar small hat and a jacket of distinctive type, and, as the evidence showed, Officer Bilyeu later identified the defendant by means of this clothing as one of the men who had been in the store.

When Mr. Fox arrived, the two officers entered his place of business with drawn pistols and moved toward the back of the room. They found no one, but they did see that a hole had

been cut in the wall between the store and the stock room, apparently so that the burglars would not trip up the alarm. The policemen further found a number of burglar tools in the stock room, including a sledge hammer and a crowbar; the dial of the safe had been broken off. A narcotics cabinet in the drug store had been opened, and part of the contents, consisting of pills and bottles, had been strewn on the floor. The burglars had entered the stock room through a hole which they had cut in the roof. Later, it developed that the burglars had reached the roof of the drug store by prying open the front doors of a deserted theater which was one door from the Fox Drug Store entrance and by climbing to the roof of the theater and walking across the intervening space.

Clyde Fox, who had meanwhile remained outside of his store, suddenly noted two men about 25 yards down the street, who had apparently emerged from the theater building. He called to the men; they looked at him and started running; they crossed the street and disappeared in the vicinity of an oil station diagonally opposite the drug store. Mr. Fox called the two officers from the store; Sergeant Slavens ran to an alleyway across the street, and soon one of the men approached him, running and breathing heavily. When he saw Sergeant Slavens he shouted, "Don't shoot, I am not armed." Slavens took him prisoner and brought him back to the drug store. He made him lie down in the street and handcuffed him. Mr. Fox and Officer Bilyeu each then identified the clothing worn by the prisoner as apparently being the clothing of the man seen by Officer Bilyeu inside the drug store and of one of the men who ran away when Mr. Fox called to him.

Investigation by other officers of the police department showed that the theater door had been pried open with the crowbar found in the stock room of the drug store, that a box of hypodermic needles taken from the store had been dropped in the lobby of the theater, and that the heel of one of the shoes worn by the defendant fitted heel marks found and photographed in the thick dust of the theater lobby.

The defendant did not take the stand, but in his brief he claims that on the day of the crime he came from Texas to Selma to collect a debt and that he was walking along the alley at the time of his arrest in search of lodging. This story does not check with the testimony of Officer Slavens that the defendant was running and not walking, that he was breathing heavily, and that as soon as he saw Slavens he requested him not to shoot, saying that he was unarmed. The

identification of the defendant's clothing was positively made by two witnesses, and the expert testimony relative to the heel marks in the theater lobby is wholly inconsistent with any theory of innocence. A careful and complete examination of the whole record in the case convinces us that the defendant was guilty beyond all reasonable doubt.

Appellant suggests that his constitutional rights were not accorded him in the matter of proper representation by attorneys. On the contrary, we conclude that the defendant received adequate and complete protection in the matter of counsel, both at the trial and on the appeal. At the trial he was represented by an experienced attorney appointed by the court. On appeal this court appointed Mr. Floyd S. Hill, of the Fresno bar, to represent him. After due consideration of the record and all the possible points on appeal, Mr. Hill filed with this court an eight-page report in which he analyzed the facts of the case and concluded as follows: "Counsel has reviewed the record of Appellant, in its entirety. After due and careful consideration, counsel cannot in good faith and in fairness to the Appellant, find any meritorious ground upon which to base an argument on this appeal."

In the circumstances, the court ordered Mr. Hill relieved of further duty but granted the defendant an opportunity to file briefs. The briefs filed by defendant are most creditable in form and represent a presentation of all possible points favorable to him. This court has carefully read and considered the briefs and the entire record; the defendant has had a fair trial and a complete consideration of his appeal.

The defendant contends that the court erred in admitting evidence of accusatory statements made in his presence after his detention. As already noted, Officer Slavens arrested the defendant when he was running down an alley near the scene of the crime; he took him to the front of the drug store where he was made to lie down upon the street and was handcuffed with his hands behind him. Mr. Fox was standing nearby within 3 or 4 feet of the defendant. The witness Slavens testified as follows:

"Q. Did Mr. Fox say anything as you approached?

" . . . . . . . . . . . .

"A. Mr. Fox stated that the clothing that the suspect wore appeared to be the same as the clothing of the one of the two men that walked and later ran from him after he called to them.

"Q. Did the defendant say anything at that time? A. No, sir.

"Q. Did the defendant make any response whatsoever to the statement? A. No, sir.

" . . . . . . . . . . . .

"Q. Now, were you later, at any time, present when Officer Bilyeu saw this defendant? A. Yes, sir.

"Q. And where did that occur? A. The same place, sir, approximately five minutes later.

"Q. Now, was anything—without saying what was said, was anything said by Officer Bilyeu at the time you saw this defendant? A. Yes, sir.

" . . . . . . . . . . . .

"Q. If I may ask the question, again, what was said by Officer Bilyeu at that time? A. Officer Bilyeu advised that the subject was wearing a small-brimmed hat like the one he had seen in the store.

"Q. And, did Mr. Johnson say anything at that time? A. No, sir, he did not.

"Q. Did he make any response whatsoever to that statement? A. No, sir."

The general rule with respect to the admissibility of testimony concerning accusatory statements is as follows: "It is for the court in the first instance to determine whether the import of the statements is such that it would furnish a foundation for proof of conduct, and it is then for the jury to decide whether the accused was aware the statements were made, whether, under all the circumstances shown, they called for a disclaimer, whether the accused did reply to them, and whether if he did not do so, such failure showed criminal intent or a consciousness of guilt. If these propositions of fact are resolved in favor of the prosecution the item of conduct should be given the effect to which upon the entire case it is entitled." (*People* v. *Yeager*, 194 Cal. 452, 486 [229 P. 40].)

The appellant argues that being innocent, he could not possibly have known how the man in the store or the man who ran away was dressed and that therefore he was not called upon to reply to the comments made in his presence. On the other hand, the affirmations that the burglar in the store and the man who ran away were dressed in the same manner as the accused might be construed by a jury to be in effect a statement, "You are the burglar," and such an accusation might well call for an answer.

In any event, the general rule stated in the *Yeager* case, *supra,* 194 Cal. 452, would apply. The admissibility of the evidence was correctly ruled upon by the trial court; the effect was for the jury to determine. Furthermore, no possible harm could have resulted to the defendant, because Mr. Fox and Officer Bilyeu took the stand as witnesses and testified and were cross-examined as to the clothing worn by the man they saw as compared with defendant's clothes.

Appellant also complains that the trial judge asked a number of questions of witnesses. ■ The judge was within his rights in accordance with what he considered to be his duty in asking these clarifying questions. The court's legitimate participation in the examination did not indicate to the jury that he was aligned with the prosecution. (*People* v. *Rigney,* 55 Cal.2d 236, 241-244 [10 Cal.Rptr. 625, 359 P.2d 23].) ■ It should be noted also that the appellant did not object to any of these questions or assign misconduct at the trial, and the circumstances of the case are such that as he did not raise this issue at the trial, he cannot do so for the first time on appeal. (*People* v. *Jaquish,* 170 Cal.App.2d 376, 378 [338 P.2d 974].)

Next, the appellant contends that the trial court misdirected the jury. He erroneously claims that the court gave an instruction on insanity, but the record shows that no such instruction was in fact given.

■ The next instruction complained of is CALJIC No. 30 relating to the silence of a defendant in the face of an accusatory statement. The instruction was proper in form and fully warranted by the facts. (*People* v. *Davis,* 48 Cal.2d 241, 251 [309 P.2d 1].)

An instruction on general criminal intent was given in addition to a charge that burglary requires proof beyond all reasonable doubt of a specific intent to commit theft. While it would have been better for the court not to have given the instruction on general criminal intent, we believe that there was no reversible error, inasmuch as there was strong and convincing proof of the guilt of the defendant, and the jury could not have reached a different conclusion. (*People* v. *Hewitt,* 198 Cal.App.2d 247 [18 Cal.Rptr. 5]; *People* v. *Zerillo,* 36 Cal.2d 222, 231, 232 [223 P.2d 223].) ■ Furthermore, the record shows that the defendant himself requested the instruction, and he cannot now complain of the invited error. (*People* v. *Rubio,* 75 Cal.App.2d 697 [171 P.2d

737]; *People* v. *Contreras*, 167 Cal.App.2d 288 [334 P.2d 208].)

Finally, appellant's suggestion that the district attorney was guilty of misconduct by commenting upon the fact that the appellant did not take the stand to testify in his own behalf is without merit.

". . . in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury." (Cal. Const., art. I, § 13.)

(See also Pen. Code, § 1323; *People* v. *Adamson*, 27 Cal.2d 478, 490 [165 P.2d 3]; *People* v. *Sauer*, 163 Cal.App.2d 740, 746 [329 P.2d 962]; *People* v. *Gillette*, 171 Cal.App.2d 497, 503 [341 P.2d 398].) The district attorney's argument was well within proper legal limits.

A complete and careful survey of the entire record and a painstaking consideration of all of the points made by appellant on the appeal lead to the conclusion by this court that he was proven guilty beyond all reasonable doubt and that he was given a fair consideration in the trial court and on the appeal.

The judgment is affirmed.

Brown, J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 11, 1962.